## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ERNESTINE PARKER,                                    :
                                                     :
              Plaintiff,                             :
                                                     :
       v.                                            :        C.A. Number: 04-344
                                                     :
COMCAST CORPORATION, a Pennsylvania                  :
corporation, COMCAST CABLE                           :
COMMUNICATIONS, INC., a Delaware                     :
corporation, COMCAST CABLEVISION OF                  :
NEW CASTLE COUNTY, LLC, a Delaware                   :
Limited Liability Corporation, successor in interest :
to Comcast Cablevision of New Castle County,         :
Inc., a Delaware corporation, PHILIP ANNONE,         :
and WILLIAM G. MOSLEY,                               :
                                                     :
              Defendants.                            :


## OPENING BRIEF OF DEFENDANTS IN
## SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT



                                        Dated:  November 30, 2005

# TABLE OF CONTENTS

**Page**

I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING .................... 2

II.     SUMMARY OF ARGUMENT ......................................................................................... 2

III.     STATEMENT OF THE FACTS ...................................................................................... 2

IV.     ARGUMENT ..................................................................................................................... 8

      A.     Standard For The Grant Of Summary Judgment. .................................................. 8

      B.     Plaintiff Cannot Establish That She Was Disabled. ............................................... 8

           1.     Plaintiff's Alleged Headaches Do Not Substantially Limit Her In A Major Life Activity. ............................................................................... 8

           2.     Comcast Did Not Fail To Provide A Reasonable Accommodation To Plaintiff Because She Did Not Need A Reasonable Accommodation ...................................................................................... 13

      C.     Plaintiff Has Failed To Establish A Claim For Wrongful Termination Under Delaware Law. ........................................................................................... 14

V.     CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Brooks v. Fiore*, No. 00-803 GMS, 2001 U.S. Dist. LEXIS 16345 (D. Del. Oct. 11, 2001) ...................................................................................................................15, 16

*Cimino v. Delaware Department of Labor*, No. 01-458 GMS , 2002 U.S. Dist. LEXIS 2979 (D. Del. Feb. 25, 2002)..........................................................................14

*Colwell v. Suffolk County Police Department*, 158 F.3d 635 (2d Cir. 1998) ..........7, 11, 12

*EEOC v. Avecia, Inc.*, No. 04-3396, 2005 U.S.App. LEXIS 22157 (3d Cir. October 13, 2005) ...........................................................................................14, 16, 17

*Gaul v. Lucent Technologies*, 134 F.3d 576 (3d Cir. 1998) ...........................................8, 13

*Hersh v. Allen Products Company, Inc.*, 789 F.2d 230 (3d Cir. 1986)................................8

*Jones v. United Parcel Service*, 214 F.3d 402 (3d Cir. 2000) ...........................................13

*Kelly v. Drexel University*, 94 F.3d 102 (3d Cir. 1996)................................................8, 10

*Marinelli v. City of Erie*, 216 F.3d 354 (3d Cir. 2000)............................................7, 11, 12

*Sears v. E.I. DuPont De Nemours & Co., Inc.*, No 97-127-SLR, 1999 U.S.Dist. LEXIS 15860 (D. Del. Sept. 30, 1999)..........................................................................9

*Shultz v. Potter*, No. 04-4227, 2005 U.S.App. LEXIS 16117 (3d Cir. Aug. 4, 2005) ..................................................................................................................................12

*Sloan v. City of Pittsburgh*, No. 03-4121, 2004 U.S. App. LEXIS 18410 (3d Cir. Aug. 31, 2004) ...............................................................................................................11

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999).......................................................12

*Tice v. Center Area Transportation Authority*, 247 F.3d 506 (3d Cir. 2001)....................13

## STATE CASES

*Hudson v. Wesley College, Inc.*, 1998 Del.Ch. LEXIS 235 (Del. Chan. Ct. 1998).....14, 15

*Lord v. Souder*, 748 A.2d 393 (Del. 2000) ..................................................................14, 16

**FEDERAL STATUTES**

42 U.S.C. § 12102(2) ............................................................................................................8

**FEDERAL REGULATIONS**

29 C.F.R. § 1630.2.............................................................................................................10

**FEDERAL RULES**

Federal Rule of Civil Procedure 56 ....................................................................................8

**STATE STATUTES**

19 Del.C. § 720.................................................................................................................17

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is an employment case in which Plaintiff alleges discrimination under the Americans with Disabilities Act ("ADA") and wrongful termination under Delaware state law. Discovery closed on October 31, 2005. In Count I, Plaintiff alleges that she could continue to work with a reasonable accommodation and that Defendants refused to make a reasonable accommodation for her. (Compl. at ¶¶ 24-25). In Count II, Plaintiff alleges that Defendants wrongfully terminated her employment in violation of Delaware public policy and also that Defendants manufactured false justifications to terminate her employment. (Compl. at ¶¶ 31-32). All dispositive motions are due by November 30, 2005. The trial is scheduled for May 8, 2006.

## II.    SUMMARY OF ARGUMENT

1.    Plaintiff's claim under the ADA fails because she cannot establish that she is a qualified individual with a disability or that Defendants failed to reasonably accommodate her.

2.    Plaintiffs' claim for wrongful termination fails because she cannot establish a breach of the implied covenant of good faith and fair dealing.

## III.    STATEMENT OF THE FACTS

Defendants are Comcast Corporation, Comcast Communications, Inc., and Comcast Cablevision of New Castle County, LLC, Inc. (collectively "Comcast"). (Compl. at ¶¶ 2-4). Defendant Philip Annone is the Director of Human Resources at Comcast's call center in New Castle County, Delaware. (Compl. at ¶ 5). Defendant William Mosely is a Manager in the Human Resources Department at Comcast's call center in New Castle County, Delaware. (Compl. at ¶ 6).

Plaintiff Ernestine Parker ("Plaintiff") was hired by Suburban Cable Company on February 8, 1998 as a receptionist. (Compl. at ¶ 10). Suburban Cable Company was purchased by Comcast in 2000. (Compl. at ¶ 10). Plaintiff continued to work for Comcast as a receptionist until July 2, 2001, when Plaintiff was promoted to the position of Administrative Assistant in the Human Resources Department of the New Castle call center. (Compl. at ¶ 11).[1]

Plaintiff claims that because of her alleged impairment of "chronic left sided headaches,"[2] she needed an accommodation to perform her job duties. (Compl. at ¶ 24). She admits, however, that she could perform all of her job duties without a reasonable accommodation:

> Q: Did you ever have any difficulties performing any of your job duties?
>
> A: No
>
> Q: Never had for your entire time as Human Resource clerk any difficulties performing any of your job duties?
>
> A: No.
>
> Q: No problems working on the computer?
>
> A: No.
>
> Q: No problem reading anything on the computer?
>
> A: No.
>
> ***
>
> Q: So then your headaches never prevented you from doing your job?

---

[1]   Plaintiff's official position title was Human Resources Clerk.

[2]   (Compl. at ¶ 12); (Plaintiff's Answers to Defendant's Interrogatories ("Pl. Ans. Interr.") at ¶ 12, attached hereto as Exhibit B).

A:     They did not.

\*\*\*

Q:     So you could read all of that while at work every
       day?

A:     Yes.

Q:     And that would be up to three to six hours?

A:     Yes.

Q:     And at work, could you write?

A:     Yes.

(Deposition of Ernestine Parker ("Pl. Dep."), at 19, 24, 36, attached hereto as Exhibit A); see

also (Pl. Dep., Ex. A, at 34).  Likewise, Plaintiff regularly worked from home at night and on the

weekends:

Q:     And tell us again, when would you do this
       additional work? Would you take it home at night?

A:     The work that I could take home, I would take
       home....I might take things home on Friday so that
       everything would be together, the folders would be
       together and ready to give out.

\*\*\*

Q:     Every week you worked at home three nights a
       week?

A:     Or maybe more.

Q:     All right.  So at least it was three nights a week, you
       would leave work at 5:00, you get home by 6:00,
       you would have dinner and three nights a week you
       would be up late working.

A:     Yes.  But I'm not sure if it was more than three
       nights or less.  It depended.

Q:     Was it an average of three times a week.

A:     I would say about an average.

Q:  And that would be every week?

A:  During that period, yes.

\*\*\*

Q:  You're working an average of three nights a week at home?

A:  About that, yes.

Q:  So you would work all day?

A:  Sometimes --

Q:  And also have to work at night?

A:  Even my lunch hours there were times when I didn't even take a lunch hour.

Q:  And you also worked weekends?

A:  Not every weekend. But I do recall on occasion I would, on my way home from church, I would go to work and work the whole afternoon.

\*\*\*

Q:  And this would involve reading?

A:  Mostly computer work.

Q:  Right. You would have to read the computer?

A:  Um-hmm.

Q:  And writing?

A:  Yes.

Q:  And the work you had to do at home at night, would that involve reading?

A:  Yes.

Q:  And writing?

A:  Um-hmm.

(Pl. Dep., Ex. A, at 105-06, 108-09, 111). Her deposition testimony establishes that she believed that she was able to perform her jobs duties.

Plaintiff also claimed that her headaches impaired several other activities which she identified as sleeping, exercising, reading, watching television, going to the movies, using a computer, cooking and cleaning. (Pl. Ans. Interr., Ex. B, at ¶13); (Pl. Dep., Ex. A, at 35). Regarding reading, watching television, going to the movies, and using a computer, Plaintiff testified extensively that, while working in the office and at home, she could read and use the computer. (Pl. Dep., Ex. A, at 105-06, 108-09, 111). Plaintiff also testified that when she got headaches, she would often write in her journal to "take [her] mind off of [her] pain." (Pl. Dep., Ex. A, at 127).

Regarding cooking, Plaintiff admitted that she was able to cook and clean and that the only reason she would not cook or clean was because she was tired from work, not because of her headaches.

> Q:    So why do you say you couldn't have cleaned?
>
> A:    Because I would be so tired when I would get off from work.
>
> Q:    You wouldn't be so tired that you couldn't work?
>
> A:    Work comes first.
>
> Q:    All right. If you didn't have to work, could you have done other things?
>
> A:    Yes.
>
> Q:    Okay. And those other things would be like cooking and cleaning and those things?
>
> A:    Yes.
>
> Q:    Your answer to that was yes?
>
> A:    Yes.

(Pl. Dep., Ex. A, at 205-06).

As to her allegations that she could not sleep, Plaintiff merely alleges that she had difficulty sleeping when she had headaches. (Pl. Dep., Ex. A, at 35). Regarding her two remaining allegations that she could not clean or exercise, as a matter of law, these activities are generally not major life activities. See Marinelli v. City of Erie, 216 F.3d 354, 363 (3d Cir. 2000); Colwell v. Suffolk County Police Dept., 158 F.3d 635, 643 (2d Cir. 1998).

Plaintiff also claims that she was wrongfully terminated under Delaware state law. (Compl. at ¶¶29-33). To support this allegation, Plaintiff alleges that various Comcast employees created or manipulated employment records in order to terminate her employment. (Compl. at ¶ 32). In contrast to her Complaint, however, Plaintiff admitted at her deposition that no one at Comcast told her that her position was being eliminated because of her alleged poor performance. (Pl. Dep., Ex. A, at 61-64, 184-85). Moreover, even though her position was eliminated, Plaintiff was offered a position as a Customer Account Executive, *which she declined*. (Pl. Dep., Ex. A, at 63-65, 136-37, attached hereto as Exhibit C). In point of fact, Plaintiff's employment was terminated on November 4, 2002, as part of Comcast's New Castle call center reorganization which resulted in the elimination of two administrative assistants position and the creation of one Human Resources Administrator position. (Deposition of Philip Annone ("Annone Dep."), at 30-32, attached hereto as Exhibit C); (Deposition of William Mosley ("Mosley Dep."), at 26, attached hereto as Exhibit D). Indeed, when asked why she thought Comcast eliminated her position, Plaintiff admitted that she did not know why Comcast terminated her employment.

> Q:    So you're not claiming, then, that Comcast fired
>       you because you had chronic headaches?
>
> A:    I don't know. I really don't know why. I really
>       don't know why they fired me.

(Pl. Dep., Ex. A, at 136).

## IV.    ARGUMENT

### A.    Standard For The Grant Of Summary Judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Hersh v. Allen Prods. Co., Inc., 789 F.2d 230, 232 (3d Cir. 1986).

### B.    Plaintiff Cannot Establish That She Was Disabled

To establish a claim that she is disabled and that she could continue to work Plaintiff must prove that she:  (1) is disabled within the meaning of the ADA; and (2) is otherwise qualified to perform the essential functions of her position with or without reasonable accommodation. Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998).  Critical to her claim is proof that she has a physical or mental impairment that substantially limits one or more of her major life activities.  See 42 U.S.C. §  12102(2).  As plaintiff cannot establish that she is substantially limited in a major life activity, Plaintiff cannot establish her case of disability discrimination.

#### 1.    Plaintiff's Alleged Headaches Do Not Substantially Limit Her In A Major Life Activity.

To "rise to the level of a disability an impairment must significantly restrict an individual's major life activities. *Impairments that result in only mild limitations are not disabilities*." Kelly v. Drexel Univ., 94 F.3d 102, 107 (3d Cir. 1996) (emphasis added).

Here, Plaintiff cannot establish that her alleged headaches qualify as an impairment that substantially limited her in any major life activity. First, she has conceded that her headaches did not impair her in the major life activity of working. In direct contrast to the allegations in her complaint that she was impaired at work, Plaintiff admits that **_she was perfectly able to perform her job_**. (Pl. Dep., Ex. A, at 19, 24, 36). As noted, Plaintiff admitted that she never had any difficulties performing her job and that her headaches never prevented her from performing her job. (Pl. Dep., Ex. A, at 19, 24, 36).

Under almost identical circumstances, this court found that an employee's headaches did not substantially limit a major life activity under the ADA. See Sears v. E.I. DuPont De Nemours & Co., Inc., No 97-127-SLR, 1999 U.S. Dist. LEXIS 15860, at *18 (D. Del. Sept. 30, 1999) (Robinson, J.). In Sears, the plaintiff admitted that he had been able to perform his job duties despite his alleged headaches:

> In fact, the only medical evidence relates solely to his migraine headaches, and that evidence indicates that, despite his pain, plaintiff 'has been performing his regular job throughout the past year during which various physicians have been attempting to identify and remedy the cause of pain.' Plaintiff's own testimony also reveals that he works at defendant's plant despite his back pain, migraine headaches, and carpel tunnel syndrome.

Id. at *20. Accordingly, the court in Sears ruled that the plaintiff was not substantially limited in a major life activity. Id.

As in Sears, the evidence reflects that Plaintiff was able to perform her job duties despite her alleged headaches. Her own testimony reveals that she had no limitation while performing her job because of her headaches. As such, it is clear that Plaintiff is not substantially limited in the major life activity of working.

Indeed, the only allegations that plaintiff offered to support her claim that she was significantly restricted in a major life activity was a blanket generalization that she was unable to sleep, exercise, read, watch television, go to the movies, use a computer, cook, and clean because of her headaches. (Pl. Dep., Ex. A, at 35); ("Pl. Ans. Interr.", Ex. B, at ¶13). Her allegations that she could not read, watch television, go to the movies, use the computer, or cook are belied by Plaintiff's deposition testimony. As noted, Plaintiff admitted that she could, read, write, and use the computer while at work. [3] (Pl. Dep., Ex. A, at 19, 108-09, 111). Plaintiff concedes that she could read and watch a computer screen for up to six hours a day[4], plus at night and on weekends.[5] Further, Plaintiff admitted that she had the ability to cook, but was only unable to cook because of her work. (Pl. Dep., Ex. A, at 106, 205-06).

As well, Plaintiff's claims regarding sleeping, exercising, and cleaning do not rise to the level of a substantial limitation of a major life activity. Major life activities are defined as tasks such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). To be "substantially limited" in a major life activity, "an individual must be significantly restricted in the performance of that activity, compared to the average person." Kelly, 94 F.3d at 107 (citations omitted). Plaintiff

---

[3] Plaintiff's allegation regarding reading was undermined by her own deposition testimony. (Pl. Dep., Ex. A, at 19, 24, 36, 105-06, 108-09, 111, 127, 194-95). For example, Plaintiff testified that when she got headaches, which supposedly affected her ability to read and watch television, she would often write in her journal to "take [her] mind off of [her] pain." (Pl. Dep., Ex. A, at 127). And, as noted above, Plaintiff worked at the office as well as at night and on weekends, which entailed reading the computer monitor and writing. (Pl. Dep., Ex. A, at 24, 34, 36, 105-06, 108-09, 111). Thus, Plaintiff, by her own admission, never suffered an impairment of reading or watching television.

[4] (Pl. Dep., Ex. A, at 19).

[5] (Pl. Dep., Ex. A, at 105-06, 108-09, 111).

has offered no evidence that her inability to sleep or clean qualifies as a substantial limitation of a major life activity. Sloan v. City of Pittsburgh, No. 03-4121, 2004 U.S. App. LEXIS 18410, at *13 ( 3d Cir. Aug. 31, 2004); Marinelli, 216 F.3d at 363. As a matter of law, the ability to exercise is not a major life activity. Colwell, 158 F.3d at 643.

In Sloan, the Third Circuit held that sleeplessness from an alleged disability is not a limitation of a major life activity unless the plaintiff can prove that it is a "uniquely severe affliction." Sloan, 2004 U.S. App. LEXIS 18410, at *13 (citing Colwell, 158 F.3d at 644) ("Difficulty sleeping is a common problem, and not a limitation of a major life activity unless the plaintiff shows a uniquely severe affliction."). Here, Plaintiff merely alleges that she had difficulty sleeping when she had these headaches. (Pl. Dep., Ex. A, at 34-35). She does not, as Sloan requires, provide any facts to demonstrate that her sleeplessness was a severe affliction.

In Marinelli, the Third Circuit held that the ability to clean is not a major life activity under the ADA unless it prevents someone from living in a "healthy or sanitary" environment." Marinelli, 216 F.3d at 362. As the Third Circuit explained in detail :

> [C]ourts have generally held that 'cleaning,' or, more generally, 'doing housework,' does not qualify as a major life activity. Although the EEOC regulations list 'caring for oneself ' as a major life activity, courts interpreting this regulation have held that such relates only to basic activities such as washing dishes and picking up trash. In other words, 'cleaning' is only considered a major life activity to the extent that such an activity is necessary for one to live in a healthy or sanitary environment. On the other hand, merely 'performing housework other than basic chores' does not qualify as a major life activity.

Marinelli, 216 F.3d at 362-63 (citations omitted).

Plaintiff does not allege any danger to her environment because of her alleged inability to clean. To the contrary, she admits that her husband completed the routine household chores that she was allegedly unable to perform and that her house continued to be "neat".

> Q:    And through the time at Comcast in July and
>        August and September and October until you leave,
>        did your house stay neat?
>
> A:    Yes.

(Pl. Dep., Ex. A, at 204). As such, Plaintiff clearly did not suffer an impairment of the major life activity of cleaning.

Similarly, any alleged inability to exercise would not qualify as a major life activity. For example, the Second Circuit, held that the plaintiff's ability to exercise "clearly fall[s] outside the range of 'major' life activities" and thus denied plaintiff's disability claim based on any impairment of this activity. Colwell, 158 F.3d at 643.

Finally, Plaintiff admitted that her alleged disability could be controlled through medical treatments. Specifically, she admitted that while she was working at Comcast, her headache medications allowed her to read, watch television, cook, clean, and perform her job. (Pl. Dep., Ex. A, at 194-195). The cases are clear that a plaintiff cannot claim that a disability substantially limits a major life activity if the disability can be controlled through medical treatments. Shultz v. Potter, No. 04-4227, 2005 U.S. App. LEXIS 16117, at *3 (3d Cir. Aug. 4, 2005) (unpublished opinion) (quoting Sutton v. United Air Lines, 527 U.S. 471, 482-83 (1999)) ("'A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity.'"); Marinelli v. City of Erie, 216 F.3d 354, 362 n.4 (3d Cir. 2000) (citing Sutton, 527 U.S. at 482-83). As such, Plaintiff cannot claim that her headaches qualify as an impairment that substantially affects a major life activity.

Accordingly, Plaintiff is not disabled and this Court should grant Comcast's

motion for summary judgment on plaintiff's disability discrimination claim under the ADA.[6]

### 2. Comcast Did Not Fail To Provide A Reasonable Accommodation To Plaintiff Because She Did Not Need A Reasonable Accommodation .

Plaintiff's only claim against Defendants under the ADA alleges that Comcast

failed to reasonably accommodate her alleged disability. (Compl. at ¶¶ 24-26). Plaintiff's

allegation in this regard is unsupportable. Under the ADA, an employer must provide a

reasonable accommodation to a disabled employee in order to perform the essential functions of

the employee's job. Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998). As set

forth at length above, Plaintiff repeatedly admitted during her deposition testimony that she

could perform the essential functions of her job despite her alleged headaches. (Pl. Dep., Ex. A,

at 19, 24). As Plaintiff had no problem performing her job, there was nothing for Comcast to

accommodate. Thus, Comcast cannot be liable for failing to provide a reasonable

accommodation to an employee *who needs no accommodation.*

Beyond being unable to demonstrate that she has a disability or needed an

accommodation, Plaintiff cannot, as she must, establish that she requested the provision of a

reasonable accommodation. Not until then, must Comcast make a reasonable effort to determine

the appropriate accommodation, if any. Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir.

2000). Here, the record is clear that Plaintiff never told Comcast that she needed any assistance.

(Pl. Dep., Ex. A, at 157).

---

[6]     Because plaintiff's alleged impairment is not a "disability" under the ADA, she cannot
establish that she had a "record of impairment," and that claim should likewise be
dismissed. See Tice v. Ctr. Area Transp. Auth., 247 F.3d 506 (3d Cir. 2001) (holding
that a "plaintiff attempting to prove the existence of a 'record' of disability still must
demonstrate that the recorded impairment is a 'disability' within the meaning of the
ADA").

Accordingly, Plaintiff's claim under the ADA is clearly deficient and should be dismissed as a matter of law.

## C.     Plaintiff Has Failed To Establish A Claim For Wrongful Termination Under Delaware Law.

A claim for wrongful termination under Delaware state law is based on a violation of the covenant of good faith and fair dealing. Specifically, courts have found that a breach of the implied covenant of good faith and fair dealing requires one of the following four situations:

> (i) where the termination violated public policy;
>
> (ii) where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or remain in a present one;
>
> (iii) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and
>
> (iv) where the employer falsified or manipulated employment records to create fictitious grounds for termination.

EEOC v. Avecia, Inc., No. 04-3396, 2005 U.S. App. LEXIS 22157, at *6 (3d Cir. October 13, 2005) (unpublished opinion) (citing Lord v. Souder, 748 A.2d 393, 400 (Del. 2000)). Plaintiff alleges that the elements in (i) and (iv) are present here.

For there to be a claim for wrongful termination, the courts have also found that a plaintiff must demonstrate that the employer's acts amounted to fraud, deceit, or misrepresentation and a plaintiff must establish the general elements of fraud. Cimino v. Del. Dep't of Labor, No. 01-458 GMS, 2002 U.S. Dist. LEXIS 2979, at *10 (D. Del. Feb. 25, 2002) (citing Hudson v. Wesley College, Inc., No. 1211, 1998 Del. Ch. LEXIS 235, at *43 (Del. Chan. Ct. Dec. 23, 1998)) ("Finally, irrespective of the category implicated, a claim for the breach of

duty of good faith and fair dealing requires employer conduct amounting to fraud, deceit, or misrepresentation. Thus, the traditional elements of fraud must be present in a claim for breach of an implied covenant of good faith."); Brooks v. Fiore, No. 00-803 GMS, 2001 U.S. Dist. LEXIS 16345, at *22 (D. Del. Oct. 11, 2001) ((citing Hudson, 1998 Del. Ch. LEXIS 235, at *43) ("[I]rrespective of the category implicated, a claim for the breach of duty of good faith and fair dealing requires employer conduct amounting to fraud, deceit, or misrepresentation. Thus, the traditional elements of fraud must be present in a claim for breach of an implied covenant of good faith.").[7]

Plaintiff has failed to prove any of the elements necessary to prove fraud or deceit by anyone at Comcast. Plaintiff alleges that Comcast employees falsified her work record and created a "file" to document Plaintiff's poor job performance. (Compl. at ¶ 32). However, Plaintiff admitted that she was not a perfect employee, but that she felt the criticisms of her work were excessive "nit-picking." (Pl. Dep, Ex. A, at 86-88). She has offered no evidence that these criticisms caused the elimination of her position or that she suffered damages as a result.

Moreover, even if Plaintiff could prove the existence of this allegedly falsified file of complaints, she has admitted that the elimination of her position was not the result of poor

---

[7]     To establish the elements of fraud in these circumstances, a plaintiff must generally prove:

- the employer had a duty to disclose material and accurate information;
- the employer knowingly or recklessly misrepresented or omitted the material information;
- the employer acted with malice or bad faith;
- the misrepresentation caused the employee's termination; and
- the employee suffered damages as a result of the misrepresentation

Hudson v. Wesley College, Inc., 1998 Del. Ch. LEXIS 235, at *43.

work performance.[8] Consistent with the facts set forth by Comcast establishing that Comcast eliminated Plaintiff's position because of a reorganization at Comcast, (Annone Dep., Ex. C, at 30-32; Mosley Dep., Ex. D, at 26), Plaintiff admitted in her deposition more than once that she understood that her position was being eliminated because of a reorganization, not because of any performance issues. (Pl. Dep., Ex. A, at 48, 59). Finally, despite the allegations in her Complaint, Plaintiff admitted in her deposition testimony that she had no idea why her employment was terminated. (Pl. Dep., Ex. A, at 136).

Plaintiff also admits that Comcast offered her another position as a Customer Account Executive, for which she would have received training and that she *declined* that position. (Pl. Dep., Ex. A, at 49, 50, 62). Accordingly, Plaintiff has not established that Comcast management manipulated her record in order to terminate her. Rather, the evidence establishes Comcast's offer to continue to employ her.

Nor is there a supportable claim that there was a wrongful termination claim based on public policy. (Compl. at ¶¶ 30-32). To establish a wrongful termination claim based on public policy, Plaintiff must:

> (1) assert a public interest recognized by some legislative, administrative, or judicial authority; and
>
> (2) occupy a position with responsibility for advancing or sustaining that particular interest

EEOC v. Avecia, Inc., No. 04-3396, 2005 U.S. App. LEXIS 22157, at * 6 (3d. Cir. October 13, 2005) (citing Lord, 748 A.2d at 400).

---

[8]     For example, in Brooks, the plaintiff alleged that his employment was terminated because of a falsified performance evaluation. Brooks, 2001 U.S. Dist. LEXIS 16345, at *22. The court granted summary judgment for the employer because the plaintiff provided no evidence to support his allegation and because there was undisputed evidence that Plaintiff was terminated for unrelated reasons. Id.

To satisfy these factors, Plaintiff claims that her employment termination violated Delaware law prohibiting employment discrimination based on an individual's disability. (Compl. at ¶¶ 30-32); see also 19 Del.C. § 720, et. seq. As noted previously, Plaintiff has failed to establish either that she has a disability or that her position was eliminated base on her job performance. Even if Plaintiff were able to establish these elements, her reliance on Delaware's employment discrimination law as the public policy that Comcast violated fails as a matter of law. EEOC v. Avecia, Inc., 2005 U.S. App. LEXIS 22157, at *7.

In Avecia, the Third Circuit addressed a claim for wrongful termination by an employee who was terminated after allegedly enduring sexual harassment in the workplace and found that in 2004 the Delaware Legislature amended the enforcement provision of Delaware's employment discrimination law such that this law was the "sole remedy for an aggrieved employee." Id. Relying on the language in the Senate Bill which became law, the Third Circuit determined that a plaintiff cannot maintain a wrongful termination claim based on Delaware's employment discrimination laws because Delaware law clearly prohibits discrimination claims disguised as wrongful termination claims.[9] Id. at *7-8.

Thus, Plaintiff's claim for wrongful termination based on the implied covenant of good faith and fair dealing is clearly deficient and should be dismissed as a matter of law.

---

[9]     The Third Circuit relied on the language in the Senate Bill which stated that "this bill confirms that [Delaware's employment discrimination law] is the exclusive and sole remedy for employment discrimination claims." Avecia, 2005 U.S. App. LEXIS 22157, at *7-8. In addition, the Third Circuit ruled that this 2004 amendment applied retroactively to wrongful discrimination claims filed before its enactment. Id. at *8 ("Moreover, when the bill is read in light of the sponsor statement....it is clear that the 2004 Amendment is meant to be retroactive.").

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment and enter any further relief deemed just and appropriate by this Court.

Respectfully submitted,

Dated:  Nov. 30, 2005                    BALLARD SPAHR ANDREWS & INGERSOLL, LLP

William M. Kelleher (No. 3961)
919 Market Street, 17th Floor
Wilmington, DE 19801
Phone:  (302) 252-4465
Facsimile:  (302) 252-4466

-and-

John B. Langel, Esquire
Farrah I. Gold, Esquire
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

Attorneys for Defendants