## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERNESTINE PARKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | C.A. No.:    04-344 KAJ |
| COMCAST CORPORATION, a | § | |
| Pennsylvania corporation, COMCAST | § | |
| CABLE COMMUNICATIONS, INC., a | § | |
| Delaware corporation, COMCAST | § | |
| CABLEVISION OF NEW CASTLE | § | |
| COUNTY, LLC, a Delaware Limited | § | |
| Liability Corporation, successor in interest | § | |
| to Comcast Cablevision of New Castle | § | |
| County, Inc., a Delaware corporation, | § | |
| PHILIP ANNONE and WILLIAM G. | § | |
| MOSLEY, | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF ERNESTINE PARKER'S ANSWERING BRIEF IN
### OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BIGGS AND BATTAGLIA

/s/ Victor F. Battaglia
Victor F. Battaglia, Sr.(ID# 156)
921 Orange Street
Wilmington, DE 19801
(302) 655-9677
VictorSr@batlaw.com
Attorney for Plaintiff

December 14, 2005

TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

I.    NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      B.    Merits of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.    THE EVIDENCE ESTABLISHES PLAINTIFF
                  WAS DISABLED AS DEFINED BY THE ADA . . . . . . . . . . . . . . . . . 13

            2.    BY INTENTIONALLY USING PLAINTIFF'S
                  DISABILITY TO ATTEMPT TO FORCE
                  HER TO RESIGN HER EMPLOYMENT, DEFENDANT
                  FAILED TO ACCOMMODATE PLAINTIFF'S NEEDS . . . . . . . . . . . 18

            3.    THERE ARE QUESTIONS OF FACT PRECLUDING
                  SUMMARY JUDGMENT ON PLAINTIFF'S STATE
                  LAW CLAIM FOR BREACH OF THE COVENANT OF
                  GOOD FAITH AND FAIR DEALING . . . . . . . . . . . . . . . . . . . . . . . . 19

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**Federal Cases**

*Bragdon v. Abbott*, 524 U.S. 624 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Clark v. Claybaugh*, 20 F3d 1290 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Coleman v. Home Depot*, 306 F3d 1333 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Colwell v. Suffolk County Police Department*, 158 F.3d 635, (2d Cir. 1998) . . . . . . . . . . . . . . . . . 16

*Emory v. Astra Zeneca Pharmaceuticals L.P.*,
    401 F.3d 174, (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15, 17

*Fiscus v. Wal-Mart Stores Inc.*, 385 F.3d 378 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Gharzouzi v. Northwestern Human Resources of Pennsylvania*,
    225 F.Supp.2d 514 (ED Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Goosby v. Johnson & Johnson Medical Inc.*, 228 F.3d 313 (3d Cir. 2000) . . . . . . . . . . . . . . . . . 13

*Head v. Glacier Northwest Inc.*, 413 F.3d 1053 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 16

*Jones v. United Parcel Service*, 214 F.3d 402 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 19

*L.K. Comstock and Company Inc. v. United Engineers and Constructors, Inc.*,
    880 F.2d 219 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Marinelli v. The City of Erie, Pennsylvania*, 216 F.3d 354 (3d Cir. 2000) . . . . . . . . . . . . . . . . . 17

*Schatzman v. Martin Newark Dealership Inc.*, 158 F.Supp. 2d 392 (D.Del. 2001) . . . . . . . . . . . . 20

*Shapiro v. Township of Lakewood*, 292 F3d 356 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 19

*Stewart v. Rutgers State University*, 120 F.3d 426 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . 13

*U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Williams v. Philadelphia Housing Authority Police Department*,
    380 F.3d 751 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

## State Cases

*Hubbard v. Hibbard Brown and Company*, 633 A2d 345 (Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . 21

*Monticelli v. Grimes,* 99 A2d 255(Del. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Nemours and Company v. Pressman*, 679 A2d 436(Del. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Schuster v. Dirocelli,* 775 A2d 1029(Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21, 22

## Federal Statutes

42 U.S.C. §12102(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## State Statutes

19 *Del. C.* §712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

19 *Del. C.* §724 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff Ernestine Parker (hereafter "Plaintiff") was hired by Suburban Cable Company as a receptionist at the New Castle County Call Center ("Call Center") in 1998. Suburban subsequently was purchased by Comcast Cable Corporation (hereafter "Comcast"). Her employment with Comcast was terminated in November of 2002.

On September 30, 2002, she filed a charge of discrimination with the Equal Employment Opportunity Commission ( "EEOC") through the Delaware Department of Labor ("DDOL"). Plaintiff charged that she was discriminated against on the basis of a disability in violation of the Americans With Disabilities Act ("ADA").

The DDOL performed an investigation and on May 30, 2003 issued a Reasonable Cause Determination finding Plaintiff had met her burden of showing she was discriminated against based on her disability. (Notice of Reasonable Cause at B-1.)

After an effort at Conciliation failed, Plaintiff's charge was referred to the EEOC which issued a Notice of Right to Sue on March 3, 2004.

Plaintiff filed a Complaint in this Court on May 27, 2004 asserting claims against Comcast, the Call Center's Director of HR, Philip Annone ("Annone") and the Manager of the Call Center's HR Department, William G. Mosley ("Mosley"). The Complaint asserted claims under the ADA as well as state law claims for wrongful termination, intentional infliction of emotional distress and *prima facia* tort.

In August 2004. the Defendants moved to dismiss portions of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).

By Opinion and Order of October 5, 2005, the Court granted Defendants' Motion and dismissed all claims against the individual Defendants, Annone and Mosley and the state law tort claims (intentional infliction of emotional distress and *prima facia* tort) against all Defendants.

On November 30, 2005, Defendants moved for Summary Judgment on the remaining claims (i.e., Plaintiff's claims under the ADA and state law claim for wrongful termination).

This is Plaintiff's Answering Brief in Opposition to Defendants' Motion for Summary Judgment. References to the record shall be to the exhibits attached to Defendants' Opening Brief and to the Appendix filed with this Brief, referred to as B-__.

## II.    SUMMARY OF ARGUMENT

1.    The evidence, construed in light was favorable to the Plaintiff, as is required on summary judgment, establishes Plaintiff was disabled as defined by the ADA. Plaintiff suffered chronic daily headaches which due to Defendant's actions ultimately caused her to be unable to sleep, read, perform even basic housework, watch television or go to the movies. Her employer, Comcast, knowing of her impairments, threatened that if she did not resign it would continue to pile work upon her, fill her personnel file with criticisms, place her on disciplinary probation and then fire her.

Under the ADA, whether an impairment substantially limits a major life activity must be weighed in a broad, practical sense. The inability to do even basic housework and the inability to sleep are impairments which substantially affect major life activities. Simply because Plaintiff was able to continue to work does not mean she was not disabled under the ADA. She was clearly restricted from performing activities that are of central importance to most people's daily lives and thus had a disability.

2.    Comcast failed to accommodate Plaintiff's needs by intentionally utilizing Plaintiff's impairment to attempt to force her to resign. Plaintiff did not request Defendant for the accommodation that her employer cease the harassment which caused her impairment to rise to the level of a disability. She did not make this request because she was afraid of losing her job and also knew Defendant would utilize any such request as a basis to assert her performance was inadequate. Plaintiff was not required to ask Defendant to refrain from such conduct because the law does not require one to perform a useless act. The accommodation of not intentionally acting to exacerbate Plaintiff's impairment is clearly reasonable on its face.

3

3.    There are questions of fact precluding summary judgment on Plaintiff's state law claim for the breach of the covenant of good faith and good dealing. Delaware law recognizes a cause of action for wrongful termination in an at will employment setting if an employer terminates an employee in violation of a public policy of the State or when the employer manufactures false justifications for termination.

Here, Defendant claims Plaintiff's employment was terminated as part of a reorganization which included an upgrade of Plaintiff's position. Defendant admits no one was ever hired to fill the upgraded position. This purported reorganization was a manufactured and false justification for Plaintiff's termination.

Defendant also manufactured false criticisms of Plaintiff by placing inaccurate and overstated criticisms of her work in her personnel file and then threatening that if she did not resign, more work would be piled on her, more criticisms would be put in her file, she would be placed on disciplinary probation, then fired. While Defendant may contend her termination was a reorganization, in fact, she was forced out of her employment by claims that her performance was unsatisfactory.

Defendant's contention that 2004 amendments to Delaware's employment rights laws should be retroactively applied to abrogate Plaintiff's claim violates well-settled principles that statutes which affect substantive rights should operate prospectively only.

At the time Plaintiff pursued her administrative action through the Delaware Department of Labor claiming unfair employment practices, the Delaware law did not provide a private right of action for violation of those statutory provisions. Plaintiff's only remedy based upon Delaware

4

statutory law which sets forth public policy, was through a claim of breach of the covenant of good faith and fair dealing.

If this court determines the amendments should be retroactively applied to abrogate her claim, Plaintiff requests leave to move for certification of that undecided question of state law for consideration by the Delaware Supreme Court.

### III.     STATEMENT OF FACTS

In 1998, the Plaintiff was hired as a receptionist at the New Castle County Call Center of what was then Suburban Cable Company.  Suburban was subsequently taken over by Comcast Corporation and Plaintiff continued in her position as receptionist, (Parker Affidavit p. 1, 2 B-3)

In the year 2000, Plaintiff began to suffer chronic, daily left-sided headaches, which were sometimes migraine headaches.  She sought treatment from her family physician as well as neurologist, Dr. Michael Carunchio.  Her physicians believe her headaches are stress related but have not been able to definitively determine the cause.  (Parker Affidavit p. 3 B-3; Parker Deposition p. 23, 24 B-28, 29)

Despite the headaches, Plaintiff performed her job exceptionally well and received uniformly favorable performance evaluations.  (Parker Affidavit p. 4 B-4)

In or about January of 2001, the HR Generalist at the Call Center, Alberina Ziemba, suggested Plaintiff document her headache problem with Comcast by filing an application under the Family Medical Leave Act ("FMLA").  Plaintiff made the application to the HR Benefits Coordinator, at the time, Donna Minor, and Dr. Carunchio, filled out an FMLA questionnaire. (Parker Affidavit p. 5, 6 Dr. Carunchio's January 2001 questionnaire at B-4, 9-12)

Though her FMLA application was approved, Plaintiff did not take a leave of absence through the FMLA process.

In or about June of 2001, Plaintiff was promoted to the position of HR Clerk.  (See letter from Kara Pietrowicz at B-13.) Though her headaches continued, Plaintiff was able to handle the HR Clerk position. (Parker Affidavit p. 6-8 B-4)

In the fall of 2001, Comcast hired a new HR Director for the Call Center, Mr. Philip Annone. At around the time Annone began his employment, or shortly thereafter, the HR Manager at the Call Center, Angela Wilson ("Wilson"), told Plaintiff and the rest of the HR staff that she believed she had been discriminated against by Comcast by being passed over for the Director's position. (Parker Affidavit p. 9 B-4)

In early 2002, the HR Manager, Wilson, and her entire staff (Alberina Ziemba – HR Generalist; Donna Minor – HR Benefits Coordinator; Kara Pietrowicz – HR Recruiter; and Edwin Gonzalez – HR Clerk) except for Plaintiff and a receptionist, Sandy Ricks, were discharged from their positions at the Call Center by Comcast. The Vice President of the Call Center, Barbara Edwards was also fired. These six individuals subsequently filed discrimination actions against Comcast under federal and state laws, alleging they were fired for complaining about discrimination and/or supporting Wilson's claims of discrimination. Within approximately one year the rest of Wilson's HR staff, including Plaintiff, had also been fired. (Annone Deposition p. 5-8 B-66-69; Parker Affidavit p. 10, 11 B-5)

In the early months of 2002, Comcast hired replacements for the recently discharged HR Staff. Mosley was hired as the HR Manager; Michael Patterson as the HR Generalist; Holly McCracken as the Benefits Coordinator; and Bethany Pace as the HR Recruiter. Plaintiff was instrumental in helping these new individuals learn the systems and procedures at Comcast. (Parker Affidavit p. 12 B-5)

At the end of June 2002, Mosley completed the annual performance evaluation for Plaintiff even though he had only been at Comcast for a matter of months. Mosley's draft written evaluation was submitted to Annone, who, though he had little contact with Plaintiff, lowered

7

several of the grades Mosley had awarded Plaintiff.[1]  (Annone Deposition p. 19, 20; Mosely Deposition p. 30-36 B-71, 72, 85-92) Even with Annone's changes, the evaluation was good enough for Plaintiff to be awarded a merit increase in salary.  (Parker Affidavit p. 14, B-5; and PAN form at B-14.)

Plaintiff received the favorable evaluation and merit increase even though she had taken on more responsibilities and duties since the January firing of the prior HR staff.  Plaintiff successfully accomplished these additional tasks in spite of her chronic daily headaches. (Parker Affidavit p. 13 B-5; Mosley Deposition p. 8 B-79)

However, in mid to late July 2002, after Mosley returned from a summer vacation, Plaintiff was assigned even more additional duties.  On a nearly daily basis by late July 2002 Mosley was calling Plaintiff to his office and criticizing her work.  The criticisms were false or extremely overstated.  She was chastised severely for things such as typographical letters on job posting memos. (Parker Deposition p. 27-29, 59, 60 B-31-34, 46, 47)  She was never on progressive discipline or placed on a performance improvement plan.  Prior to July 2002 Mosley never saw a need even to counsel Plaintiff on her performance. (Parker Affidavit p. 15 B-5, 6, 15; Annone Deposition p. 26; Mosley Deposition p. 16 B-74, 80)

On an occasion in late July when Mosley had called Plaintiff into his office to criticize her work, Plaintiff informed Mosley of her chronic daily headaches and how the additional duties and stress were affecting her.  Comcast's response was to add more assignments and more criticisms. (Parker Affidavit p. 16 B-6; Parker Deposition p. 25, 26 B-29, 30)

---

[1] Annone raised one grade given by Mosley.  He raised the evaluation which stated: "Is honest and behaves ethically and with integrity." (Annone Deposition p. 20 B-72)

She continued to accomplish all of her assigned tasks, even though by this time she had to take work home on two to three evenings per week in order to finish her assignments. She did not complain to Mosley or Annone about the extra work or unfair criticisms for fear of losing her job. (Parker Deposition p. 105, 106, 157, 158 B-54, 55, 57, 58)

By this time the increasing stress had exacerbated her chronic headaches to the extent that she had extreme difficulty reading, watching television or movies and sleeping. She spent sleepless nights because of the excruciating pain. She was unable to do even basic household chores, such as cleaning and cooking and relied upon her husband to do all of these basic household tasks. (Parker Deposition p. 35; Parker Affidavit p. 17, B-4, 38)

Within a short time after she told Mosley of her headaches in mid to late July, her situation and disability worsened. On August 1, 2002, she collapsed at work while discussing job assignments with Pace. Though he now denies it, Annone was present when Plaintiff collapsed. Mosley drove Plaintiff home from work on that day and they again discussed her headaches and her ability to perform her job. Mosley and Annone also discussed Plaintiff's headaches. When she returned to work a few days later, after having seen her family physician and her neurologist, her workload continued to increase, as did the criticism of her work. (Parker Affidavit p. 18-21 B-4; and Reports B-17-20; Mosley Deposition p. 20, Annone Deposition p. 50, 51 B-77, 78, 82)

On August 13 she applied again to her employer under the FMLA because of her headaches and again Dr. Carunchio completed the FMLA medical questionnaire (*see* B-22-26). Mosley was aware of her application around August 13, 2002. Her FMLA request was again approved and the benefits coordinator, Holly McCracken, notified both Mosley and Annone. (Parker Affidavit p. 22 and e-mail B-5, 21; Mosley Deposition p. 19 B-81)

Just days after her FMLA application, and about two weeks after her collapse at work, Mosley completed a memorandum highly critical of Plaintiff's job performance.  (Mosley Deposition p. 41, 42 and memo; B-92, 93, 107) Mosley's August 16, 2002 Memorandum stated Plaintiff was not supporting the HR team in an effective manner.  It also noted that on August 5, 2002, he had discussed with Plaintiff her "...medical condition along with her ability to handle the volume of work that is required...".  Mosley admits he was concerned for her health and ability to perform her work (Mosley Deposition p. 41, 42 B-92, 93)

It was at this time Mosley learned from Annone that Plaintiff was being targeted for termination. ( Mosley Deposition p. 24, 25, B-83, 84)

At an August 22, 2005meeting, Annone furthered the process to get rid of Plaintiff.  He told her she had no future at Comcast.  Annone said that there were complaints about her job performance.  At another meeting in August Plaintiff reminded Annone that she suffered from chronic daily headaches and told him she was hanging on by a thread because the stress over the last several months due to the increasing job assignments and constant nit picking of her performance had become nearly unbearable. (Parker Affidavit p. 23 B-7; Parker Deposition 57-59 B-44-47)

In a memorandum to his supervisors dated August 27, 2002, Annone purported to conclude there needed to be an upgrade of Plaintiff's position.  In fact, no one was ever hired for the purported upgraded position. His memorandum indicated he had "...considered placing Miss Ernie in another role/position at Comcast Cable, however, her knowledge of confidential information prohibits internal transfers." (Annone Deposition p. 42, 43 B-75, 76 and memo B-108)

10

Just weeks later, in early September 2002 Annone met again with Plaintiff. Annone told her to resign and threatened that if she did not, they would continue to pile on her workload and increase the negative performance criticisms in her file. He waived a thick file in front of her claiming it contained documentation of her performance deficiencies and told her Comcast would increase her work, place more negatives in her file, place her on probation and fire her for cause. Annone told her she should take a severance package from Comcast which would allow him to say her termination was due to reorganization, enabling her to utilize company sponsored job searches and obtain unemployment benefits. (Parker Deposition p. 54, 174, 175, 182; Parker Affidavit p. 24, 25 B-7, 41, 59-61)

Plaintiff finally agreed to resign and initially agreed to take the severance offered by Annone. Later she decided not to sign the severance agreement. Because she did not accept the severance package, Defendant withdrew the offer to participate in the job search program and Annone told her she would be fired as part of a reorganization. After she told Annone she had consulted an attorney he offered her a position as a Customer Account Executive (CAE), a position she believed Annone knew she would not accept because of the added stress. He made this offer even though he earlier concluded she was ineligible for another position. After she agreed to leave the company, the criticisms of her performance ceased, her workload increased no further, and things went back to the pre-July 2002 situation. (Parker Affidavit p. 26-30 B-7, 8; Parker Deposition p. 48, 49, 63, 64, 136, 184, B-39, 40, 50, 51, 56, 63)

She was told her last day of work would be November 4, 2002. During her last weeks at Comcast, some of her coworkers told her she should not be so conscientious about her work since Comcast was firing her. However, she refused to do anything less than her best. Her

11

employment ended on November 4, 2002. The PAN form supposedly putting her discharge into effect falsely indicated her termination had been voluntary and that she had accepted a severance package. (Parker Affidavit p. 31-34 B-8, 27)

By mid-November she obtained a part-time sales position at Macy's Department store. This part-time position allowed her to receive unemployment benefits. She presently continues work at Macy's on a part-time basis and continues to have chronic headaches. There are only limited health benefits at her new job and none for pre-existing conditions. She, therefore, no longer can afford to see her neurologist for her chronic headaches. (Parker Affidavit p. 35 B-8; Parker Deposition p. 33, 195 B-36, 64)

## IV.    ARGUMENT

### A.    Legal Standard.

In deciding a motion for summary judgment the court must examine the record in the light most favorable to, and resolve all inferences in favor of, the non-moving party. *Stewart v. Rutgers State University*, 120 F.3d 426 (3d Cir. 1997). The Third Circuit has urged special caution in granting summary judgment to an employer in discrimination and retaliation cases. *Gharzouzi v. Northwestern Human Resources of Pennsylvania*, 225 F.Supp.2d 514,517 (ED Pa. 2002). Citing *Goosby v. Johnson & Johnson Medical Inc.*, 228 F.3d 313 (3d Cir. 2000).

In the present case, Plaintiff has brought claims pursuant to the Americans with Disabilities Act (ADA). Defendants have moved for summary judgment arguing Plaintiff has not established she has a disability as defined under the ADA. The question of whether an individual has a disability by being substantially limited in a major life activity within the meaning of the ADA is a question of fact. *Williams v. Philadelphia Housing Authority Police Department*, 380 F.3d 751, 763 (3d Cir. 2004); *Emory v. Astra Zeneca Pharmaceuticals L.P.*, 401 F.3d 174, 183 (3d Cir. 2005).

In the present case, Defendant's arguments are based upon a construction of the record which would have this court make inferences in favor of Defendant's positions with respect to whether Plaintiff has established a disability as defined by the ADA. When the record is examined in a light most favorable to the Plaintiff it is clear Defendant's motion for summary judgment must be denied.

### B.    Merits of argument.

1.    THE EVIDENCE ESTABLISHES PLAINTIFF
      WAS DISABLED AS DEFINED BY THE ADA.

13

The evidence establishes that due to her chronic daily headaches Plaintiff was unable to sleep, read, perform basic housework, watch television or go to movies. Therefore she was disabled under the ADA. Her employer knew of her impairments yet threatened that if she did not resign, work would be piled on her, her personnel file would be filled with criticisms and disciplinary actions, she would be put on probation and then fired. She has, thus, established the basis for a claim under the ADA.

A *prima facie* case of discrimination under the ADA is established when a Plaintiff shows: 1. She is a disabled person within the meaning of the ADA; 2. She is otherwise qualified to perform the essential functions of her job, with or without, accommodation; and 3. She has suffered an adverse employment action as a result of the discrimination. *Williams v. Philadelphia Housing Authority Police Department*, 380 F.3d 751, 761 (3d Cir. 2004).

In the present case Defendant argues Plaintiff is not disabled as defined by the ADA (Defendant's Argument B1) and her employer did not fail to provide a reasonable accommodation (Argument B2). Both arguments are incorrect.

Under the ADA a disability is defined as *inter alia,* a physical or mental impairment, which substantially limits one or more of the individuals major life activities; *Williams. supra.* 380 F.2d at 72, 42 U.S.C. §12102(2).

Defendant argues Plaintiff has not demonstrated she is substantially limited in a major life activity. The evaluation of whether an impairment affects an individual's major life activities must be on a case by case basis. Making comparisons to rulings in other cases serves only as a benchmark to gauge whether a Plaintiff's impairment amounts to a disability under the ADA. *Emory v. Astra Zeneca Pharmaceuticals L.P.,* 401 F3d 174, 182 (3d Cir. 2005). Here, Plaintiff's

14

impairment of chronic daily headaches caused her not to be able to sleep or perform even basic household chores. This is a disability under the ADA.

The issue is whether there is evidence presented by which a fact finder could determine there was a substantial limitation on the conditions, manner or duration by which a plaintiff performs life activities, as compared to the average person in the general population. *Emory. supra* 401 F.3d 179, 180. It is settled that "...a substantial limitation of a major life activity does not mean impossibility or even great physical difficulties; rather, substantial limitation is weighed in a broad, practical sense, and may include non-physical factors." *Fiscus v. Wal-Mart Stores Inc.,* 385 F.3d 378, 384 (3d Cir. 2004) citing *Bragdon v. Abbott,* 524 U.S. 624(1998).

The present case may not be the typical ADA situation in that it was Comcast's egregious conduct and threats which caused Plaintiff's impairment to become so devastating that it affected every aspect of her existence. Plaintiff suffered headaches since the year 2000 but was able with medications, physicians treatments and sheer willpower to perform her job, take care of herself, sleep, read, do basic housework and have a normal life with her husband.

That changed in the Summer of 2002 when Defendant began its assault upon her. In January of 2001 she had notified her employer of her impairment through her FMLA application. Defendant seems to argue that because Plaintiff never took a leave of absence in 2001, her 2001 FMLA application does not amount to any form of notice of her impairment. Defendant is, in effect, asking the Court to make an inference in their favor, rather in the favor of Plaintiff as is required by summary judgment. Clearly the 2001 FMLA application, and the Physician's report is in Plaintiff's personnel file and is notice of her impairment.

15

Between the year 2000 when her headaches began and summer of 2002 Plaintiff had been promoted from Receptionist to HR Clerk. She continued to have excellent performance evaluations. Her impairment continued but did not destroy her ability to perform her job nor have significant effects on her major life activities.

In January 2002 the HR staff with whom she had worked with for some time were fired after her HR manager, Angela Wilson, made a discrimination claim related to Mrs. Wilson's being passed over for the HR Director position. The Vice President of the call center, Barbara Edwards, was also fired at this time.

Plaintiff survived this purge and again was able to function, even with the added duties assigned to her now that the other HR Clerk, Edwin Gonzales, was gone. In fact, her performance evaluation in June/July 2002 led to a merit increase.

It was just after this merit increase Defendant began to assign her even more and different tasks. It was also at this time that Mosley, and then Annone began to harshly criticize her work. This led to extra stress and caused her impairment to reach the level of a disability under the ADA.

Plaintiff's uncontradicted testimony is that her headaches were so painful she was no longer able to sleep. Sleeping is considered to be a major life activity. See *Head v. Glacier Northwest Inc.*, 413 F.3d 1053 (9th Cir. 2005). Likewise the inability to do even basic housework is recognized as a major life activity. (See *Colwell v. Suffolk County Police Department*, 158 F.3d 635, 653 (2d Cir. 1998) where the court confirmed both sleeping and the basic chores of housework are major life activities.)

16

This is not a situation such as that in *Marinelli v. The City of Erie, Pennsylvania,* 216 F.3d 354 (3d Cir. 2000) where the plaintiff asserted he could no longer do many household chores. Here, Plaintiff relied upon her husband to do all of the housework. She could do nothing.    This is also not a case like *Sears v. E.I. DuPont de Nemours,* 1999 U.S. Dist. Lexis 15860 (D.Del 1999) as Defendant asserts.  In that case, the employee asserted only that his headaches affected the major life activity of working.  Clearly that is not similar to the Plaintiff here where her entire life was affected.

Defendant seems to argue that because Plaintiff continued to be able to finish her work and never took time off, that she can not have a disability.  Defendant focuses on what Plaintiff was able to do and accomplish despite her impairment.  This is not the correct test under the ADA.  As the court noted in *Emory v. Astra Zeneca, supra,* focusing on what a plaintiff "has managed to achieve misses the mark."  401 F3d at 180.  "What a plaintiff confronts, not overcomes, is the measure of substantial limitation under the ADA."  *id.*  The true inquiry is whether the Plaintiff has an impairment that prevents or severely restricts her from performing activities that are central importance to most people's daily lives.  "The touchstone is not publicity or frequency, but importance to the life of the individual."  *Fiscus v. The Wal-Mart Stores Inc. supra,* 385 F.3d at 384.  The purpose of the ADA is not to protect only those with tragic and obvious impairments.  Rather the ADA was enacted because the legislature found there is continuing, unfair and unnecessary discrimination against people who have disabilities. *Emory, supra* 401 F.3d at 180.

Plaintiff's impairment was real and known to her employer.  It was only days after she collapsed at work and discussed her chronic headaches with her supervisor, Moseley, that he

17

prepared the August 16, 2003 memorandum indicating purported performance deficiencies by Plaintiff. This ultimately led to the threat that if she did not resign, those performance deficiencies would be utilized and augmented in order to justify firing her for cause. In this same memo, Mosely noted Plaintiff's medical condition and how it affected her performance. Yet the employer went ahead and attempted to coerce Plaintiff into resigning.

As determined by the Delaware Department of Labor, Plaintiff's medical history, coupled with the fact that shortly after she collapsed Comcast developed performance deficiencies and asked her to resign, indicates Plaintiff has met her burden of showing she was discriminated against due to her disability. (See Notice of Reasonable Cause at B-1 )

When the evidence is construed in the light of favorable to Plaintiff it is clear she has established a disability and Defendant's argument must be rejected and summary judgment must be denied.

> 2.    BY INTENTIONALLY USING PLAINTIFF'S
>        DISABILITY TO ATTEMPT TO FORCE
>        HER TO RESIGN HER EMPLOYMENT, DEFENDANT
>        FAILED TO ACCOMMODATE PLAINTIFF'S NEEDS.

The evidence and inferences from the evidence construed in light most favorable to Plaintiff shows that Defendant intentionally piled work on Plaintiff and made false or exaggerated criticisms of her work in an attempt to harass her into agreeing to resign her employment. Defendant did this knowing of her disability and headaches.

Of course, Plaintiff did not request Defendant for the accommodation that it to stop this harassment. She was not only afraid for her job, but also knew Defendant would utilize any such requests as fodder for increased criticism of her ability to do her job. Plaintiff was not required to ask Defendants to refrain from such conduct. The law simply does not require one to perform a

18

useless act. 15A C.J.S *Common Law* §23; *L.K. Comstock and Company Inc. v. United Engineers and Constructors, Inc.,* 880 F.2d 219(9th Cir. 1989)

The accommodation Defendant should have made was simply not intentionally exacerbate Plaintiff's impairment to force her to resign. Employers which have notice of the need for an accommodation have an affirmative duty to engage in an interactive process to determine an appropriate accommodation *Jones v. United Parcel Service,* 214 F.3d 402 (3d Cir. 2000). Here, Plaintiff told Annone she was hanging by a thread due to the increased workload and criticisms. Yet, instead of seeing what could be done to accommodate Plaintiff's needs Defendant threatened her and piled on more work, increasing the severity of her impairment.

It is well settled that on a Motion for Summary Judgment a plaintiff/employee need only show that an accommodation is reasonable on its face. *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391,401,402 (2002), *see also: Shapiro v. Township of Lakewood,* 292 F3d 356, 360(3d Cir. 2002). Obviously refraining from actively utilizing an employee's impairment to force her out of a job is a reasonable accommodation.

> 3.    THERE ARE QUESTIONS OF FACT PRECLUDING
>        SUMMARY JUDGMENT ON PLAINTIFF'S STATE
>        LAW CLAIM FOR BREACH OF THE COVENANT OF
>        GOOD FAITH AND FAIR DEALING.

Delaware recognizes a cause of action for breach of contract where an employer terminates an employee in breach of the covenant in good faith and fair dealing. *E.I. DuPont de Nemours and Company v. Pressman,* 679 A2d 436(Del. 1996). A breach of the covenant occurs, *inter alia,* when the termination of employment violates a public policy of the State or when the employer manufactures false justifications for termination of the employment. *Schuster v.*

19

*Dirocelli*, 775 A2d 1029(Del. 2001), *Schatzman v. Martin Newark Dealership Inc.*, 158 F.Supp. 2d 392(D.Del. 2001). Defendant breached the covenant in both ways in the present case.

As set forth above, Plaintiff has established factual disputes as to whether the termination of her employment violated the public policy of the State as set forth in the State's anti-discrimination and employment statutes, specifically in this case, 19 *Del. C.* §724 which prohibits discrimination based on disability.

Plaintiff also has demonstrated, as set forth in the Statement of Facts *supra* there is evidence in the record supporting Plaintiff's claim that the purported justifications for the termination of her employment (*i.e.*, reorganization and upgrade her position) are manufactured and false. Defendant manufactured false criticisms of Plaintiff by placing inaccurate and/or overstated criticisms of her work in her personnel file and then threatened that if she did not resign, work would be piled on her, her personnel file would be peppered with more criticisms, she would be placed on probation and then fired. Defendant admits that no one was hired in the upgraded position described in Annone's August 27, 2002 memo. This reorganization was a manufactured justification for termination of Plaintiff.

Defendants even went so far as to create a Personnel Action Notification (PAN) form which falsely states her termination was voluntary and that she had signed a severance agreement. In fact, Plaintiff refused to sign the severance agreement. Defendant may contend her termination was a "reorganization". In fact, she was forced out with claims by her employer that her performance was unsatisfactory. Defendant has manufactured fake justifications for her termination.

20

With respect to Plaintiff's claim that her termination was in violation of public policy, Defendant, relying on the non-precedential ruling of the Court of Appeals for the Third Circuit in *EEOC v. Avecia Inc.*, 2005 U.S. Appellate Lexis 22157 (3d Cir. 2005) argues the 2004 amendments to 19 *Del. C.* §712 *et seq.* should be retroactively applied to abrogate Plaintiff's claim.

However, despite the ruling of the Court in *EEOC v. Avecia, Inc., supra.*, it is well settled legislation will not given retroactive effect unless that is the clear intent of the legislature. *Hubbard v. Hibbard Brown and Company*, 633 A2d 345 (Del. 1993). Further, statutes which affect substantive rights (such as claims arising before the enactment of the statute) ordinarily operate prospectively only. *Monticelli v. Grimes*, 99 A2d 255 (Del. 1953)

Here, Plaintiff obviously could not have availed herself of the right to bring a civil action to enforce of 19 *Del. C.* §724 pursuant to the then non-existent provisions of 19 *Del. C.* §712. It was only through a claim based upon the breach of the covenant of good faith and fair dealing could she pursue any claim in any way related to, or based upon Delaware statutory law. See *Schuster v. Dirocelli, supra.*

In this case, Plaintiff did pursue her administrative action with the Delaware Department of Labor which found probable cause her employer had violated Delaware anti-discrimination laws. (See B-1)[2] Under the procedures then in effect her claim went to the EEOC which issued a Right to Sue letter. Her state law claim, then was for wrongful termination.

---

[2] A determination by an administrative agency which is authorized by law to conduct an investigation is admissible and may be considered in evaluating a Motion for Summary Judgment under Rule 56. See *Clark v. Claybaugh*, 20 F3d 1290 (3d Cir. 1994); *Coleman v. Home Depot*, 306 F3d 1333 (3d Cir. 2002).

21

After the 2004 amendments to 19 *Del. C.* §712 *et seq.* upon such a determination by the DDOL, a Delaware Right to Sue letter would have issued. Under the process as it was at the time Plaintiff went through that administrative process however, Plaintiff, pursuant to *Schuster v. Dirocelli, supra,* had a cause of action for wrongful termination due to breach of the covenant of good faith and fair dealing. The employer violated the public policy of the State by discriminating against her based on her disability.

The effect of the amendments to 19 *Del. C.* §712 upon a pending action for wrongful termination has not been decided by the Delaware Supreme court. If this Court believes the amendments should be retroactive, then Plaintiff asks for leave to move for certification of that question of law for consideration by the Delaware Supreme Court.

22

## V.    CONCLUSION

This is a case where an employer knowingly utilized an employee's impaired medical condition to force her out of a job. Knowing Plaintiff suffered from severe headaches, Defendant took an employee who had an excellent work record and set out to destroy her ability to enjoy any aspect of her life.

Comcast was successful in its campaign to drive Plaintiff out of a job and should not be rewarded simply because it claims her job was eliminated due to a reorganization.

The Americans with Disabilities Act is designed to protect impaired workers. The law must protect employees from the intentional acts of an employer which utilizes an impairment to devastate her life.

                              BIGGS AND BATTAGLIA

                    By:    /s/ Victor F. Battaglia
                           Victor F. Battaglia (ID # 156)
                           Biggs and Battaglia
                           921 North Orange Street
                           P.O. Box 1489
                           Wilmington, DE  19899
                           (302) 655-9677
DATED:  12/14/2005         Attorney for Plaintiff

23

## CERTIFICATE OF SERVICE

I, Victor F. Battaglia, undersigned counsel of record, hereby certify that on December 14, 2005, I caused a copy of the attached **PLAINTIFF ERNESTINE PARKER'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** to be served on the following in the manner indicated:

**VIA ELECTRONIC FILING**

William M. Kelleher, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 12th Floor
Wilmington, DE 19801

**VIA FIRST CLASS MAIL**
John B. Langel, Esquire
Farrah I. Gold, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599


_/s/ Victor F. Battaglia_
Victor F. Battaglia (I.D. #156)