## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ERNESTINE PARKER,                                    :
                                                     :
                    Plaintiff,                       :
                                                     :
            v.                                       :    C.A. Number: 04-344
                                                     :
COMCAST CORPORATION, a Pennsylvania                  :
corporation, COMCAST CABLE                           :
COMMUNICATIONS, INC., a Delaware                     :
corporation, COMCAST CABLEVISION OF                  :
NEW CASTLE COUNTY, LLC, a Delaware                   :
Limited Liability Corporation, successor in interest :
to Comcast Cablevision of New Castle County,         :
Inc., a Delaware corporation, PHILIP ANNONE,         :
and WILLIAM G. MOSLEY,                               :
                                                     :
                    Defendants.                      :

## REPLY BRIEF OF DEFENDANTS IN FURTHER
## SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Dated:  December 21, 2005

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 2

II.   ARGUMENT........................................................................................................ 2

    A.   Plaintiff Cannot Establish That She Was Disabled................................................. 2

        1.   Plaintiff's Alleged Headaches Do Not Substantially Limit Her In A
            Major Life Activity. ..................................................................................... 2

        2.   Even If Plaintiff Is Deemed Disabled, It is Clear That She Could
            Perform The Essential Functions of Her Job without
            Accommodation. ........................................................................................... 7

        3.   Plaintiff Never Requested An Accommodation to Perform Her Job.......... 8

        4.   Plaintiff Fails to Identify a Reasonable Accommodation. ......................... 10

    B.   Plaintiff Has Failed To Establish A Claim For Wrongful Termination
        Under Delaware Law. .......................................................................................... 12

III.  CONCLUSION..................................................................................................... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell v. Waste Management, Inc.*, No. 03-992-KAJ, 2004 WL. 2451416 (D. Del. Oct. 29, 2004) (Jordan, J.) ............................................................................................8

*Brooks v. Fiore*, 00-803-GMS, 2001 U.S. Dist. LEXIS 16345 (D. Del. Oct. 11, 2001) ..................................................................................................................13

*Colwell v. City of Suffolk County Police Department*, 158 F.3d 635 (2d Cir. 1998) ......................................................................................................3, 4

*EEOC v. Avecia, Inc.*, No. 04-3396, 2005 U.S. App. LEXIS 22157 (3d Cir. October 13, 2005) ......................................................................................12, 14

*Emory v. Astra Zeneca*, 401 F.3d 174 (D. Del. Mar. 11, 2005)........................................5, 6

*Gaul v. Lucent Technologies*, 134 F.3d 576 (3d Cir. 1998) .............................................11

*Hackman v. Valley Fair*, 932 F.2d 239 (3d Cir. 1991) ........................................................2

*Harter v. University of Indianapolis*, 5 F. Supp. 2d 657 (S.D. Ind. 1998) ........................10

*Jones v. United Parcel Service*, 214 F.3d 402 (3d Cir. 2000) .............................................8

*Levya v. Computer Sciences Corporation*, No. 04-002-KAJ, 2005 U.S. Dist. LEXIS 1551 (D. Del. Jan. 25, 2005) ...........................................................................13

*Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731 (5th Cir. 1999)............................................10

*Marinelli v. City of Erie*, 216 F.3d 354 (3d Cir. 2000)........................................................4

*Pesterfield v. Tennessee Valley Authority*, 941 F.2d 437 (6th Cir. 1991) ...........................10

*Reed v. Agilent Technologies, Inc.*, 174 F. Supp. 2d 176 (D. Del. 2001)....................12, 13

*Shultz v. Potter*, No. 04-4227, 2005 U.S. App. LEXIS 16117 (3d Cir. Aug. 4, 2005) .............................................................................................................4, 5

*Sloan v. City of Pittsburgh*, No. 03-4121, 2004 U.S. App. LEXIS 18410 (3d Cir. Aug. 31, 2004) ..................................................................................................3, 4

*Sutton v. United Air Lines*, 527 U.S. 471 (1999) ................................................................5

*Verzeni v. Potter*, No. 03-1652, 2004 U.S. App. LEXIS 18581 (3d Cir. Sept. 2, 2004) ...................................................................................................................10, 11

## STATE CASES

*Lord v. Souder*, 748 A.2d 393 (Del. 2000) ........................................................................12

## FEDERAL STATUTES

42 U.S.C. § 12101..................................................................................................................9

29 U.S.C. § 2601....................................................................................................................9

## I.  INTRODUCTION

In her Response to Comcast's Motion for Summary Judgment, Plaintiff fails to raise any genuine issue of material fact that would preclude summary judgment.  When stripped of Plaintiff's hyperbole, what remains are two claims:  (1) that Comcast failed to reasonably accommodate an alleged disability; and (2) that Comcast violated the covenant of good faith and fair dealing.  Try as she now might to change and embellish her testimony with an affidavit and to ignore applicable case law regarding her reasonable accommodation claim, the record evidence and relevant case law clearly establish the following:  (1) Plaintiff is not disabled; (2) even if Plaintiff were disabled, she did not require accommodation while employed at Comcast; (3) Plaintiff never sought accommodation while employed at Comcast; and (4) Plaintiff cannot identify a reasonable accommodation that she would have required.  Similarly, while Plaintiff would have this Court disregard applicable case law, it is clear that the law does not support her claim that Comcast violated the covenant of good faith and fair dealing.

## II.  ARGUMENT

### A.  Plaintiff Cannot Establish That She Was Disabled

#### 1.  Plaintiff's Alleged Headaches Do Not Substantially Limit Her In A Major Life Activity.

In a desperate attempt to support her claim that she is disabled, Plaintiff now contradicts her deposition testimony with a self-serving affidavit.  As Plaintiff provides no explanation for the transformation of her allegations, the Court should disregard plaintiff's affidavit.  Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact

exists."). Moreover, even with Plaintiff's affidavit, she is unable to establish that she is disabled within the meaning of the ADA.

Plaintiff's deposition testimony clearly establishes that she could read, write, and use the computer. (Pl. Dep., Ex. A, at 19, 24, 36, 105-06, 108-09, 111, 127, 194-95). In fact, Plaintiff even **wrote** in her journal to "take [her] mind off of [her] pain." (Pl. Dep., Ex. A, at 127). And, as previously noted in Comcast's motion for summary judgment, Plaintiff worked at the office as well as at night and on weekends, which entailed reading the computer monitor and writing. (Pl. Dep., Ex. A, at 24, 34, 36, 105-06, 108-09, 111). Thus, Plaintiff, by her own admission, never suffered a substantial limitation in her ability to read or watch television.

Likewise, her deposition testimony demonstrates that Plaintiff had the ability to cook and clean, but chose not to do so. (Pl. Dep., Ex. A, at 106, 205-06). Indeed, Plaintiff testified as follows:

> I didn't – when I wasn't at work, I didn't do anything
> stressful. I just wanted to be – my mind to be sharp when I
> went to work. So I would go home and just, you know, try
> to sleep or didn't do anything that was stressful. Didn't do
> any cooking, any cleaning, any shopping. Just saved all my
> energy for work.

(Pl. Dep. at 36-37). In fact, when asked if she told any of her doctors that she was unable to perform any of these functions, Plaintiff stated that she did not. (Pl. Dep. at 37).

Perhaps recognizing the futility of her claim, Plaintiff ignores the case law regarding sleeping and makes no attempt to connect the facts of this case to the well-settled law. Specifically, Plaintiff ignores the Third Circuit's holding in Sloan, in which the court held that sleeplessness from an alleged medical condition is not a limitation of a major life activity unless the plaintiff can prove that it is a "uniquely severe affliction." Sloan v City of Pittsburgh, No. 03-4121, 2004 U.S. App. LEXIS 18410, at *13 (3d Cir. Aug. 31, 2004) (citing Colwell v.

Suffolk County Police Dep't, 158 F.3d 635, 644 (2d Cir. 1998) ("Difficulty sleeping is a

common problem, and not a limitation of a major life activity unless the plaintiff shows a

uniquely severe affliction.")). Despite three opportunities to do so -- her answers to

interrogatories, her deposition, and now her affidavit -- Plaintiff offers nothing more than that

she had difficulty sleeping and fails to provide any facts to demonstrate that her sleeplessness

was a "uniquely severe affliction" as required by Sloan.

　　　　　Similarly, Plaintiff attempts to ignore the Third Circuit's holding in Marinelli, in

which the court held that the ability to clean is not a major life activity under the ADA unless it

prevents someone from living in a "healthy or sanitary" environment." Marinelli v. City of Erie,

216 F.3d 354, 362 (3d Cir. 2000). As noted, it was not that Plaintiff could not clean. Rather she

chose not to and was not prevented from living in a healthy environment. To the contrary, she

admits that her husband completed the routine household chores and that her house continued to

be "neat." (Pl. Dep., Ex. A, at 204). Although Plaintiff attempts to equate cleaning with caring

for oneself, the Third Circuit in Marinelli explicitly ruled to the contrary. It noted that "courts

have generally held that cleaning, or, more generally, doing housework, does not qualify as a

major life activity." 216 F.3d at 362. Further, it explained that "[a]lthough the EEOC

regulations list "caring for oneself" as a major life activity, courts interpreting this regulation

have held that such relates only to basic activities such as washing dishes and picking up trash."

Id. Accordingly, Plaintiff clearly did not suffer an impairment of the major life activity of

cleaning.

　　　　　Further still, Plaintiff ignores the case law of this Circuit, which explicitly holds

that a plaintiff cannot claim that a medical condition substantially limits a major life activity if

the medical condition can be controlled through medical treatments. Shultz v. Potter, No. 04-

4227, 2005 U.S. App. LEXIS 16117, at *3 (3d Cir. Aug. 4, 2005) (quoting Sutton v. United Air

Lines, 527 U.S. 471, 482-83 (1999)) ("'A person whose physical or mental impairment is

corrected by medication or other measures does not have an impairment that presently

'substantially limits' a major life activity.'"); Marinelli, 216 F.3d 354, 362 n.4 (3d Cir. 2000)

(citing Sutton, 527 U.S. at 482-83). When asked if medicines permitted her to perform activities

that she claims were limitations, plaintiff testified as follows:

> Q:    So other than when you're getting a migraine, the
>       medicines allow you to watch TV?
>
> A:    It does, yes.
>
> Q:    And movies?
>
> A:    Yes.
>
> Q:    And cook?
>
> A:    I'm better.
>
> Q:    And clean?
>
> A:    Yes.

(Pl. Dep. at 194-95). Thus, Plaintiff cannot claim that her headaches qualify as an impairment

that substantially affects any life activity, let alone a major life activity as defined by the ADA.

Plaintiff's reliance on Emory v. Astra Zeneca is inapposite as well. In Emory, the

plaintiff had cerebral palsy, and as a result, he suffered partial paralysis accompanied by both

physical and mental limitations. 401 F.3d 174 (D. Del. Mar. 11, 2005). The plaintiff could not

lift anything heavy, tie his shoes or a tie, roll his sleeves, close buttons, put on a belt, cut his

fingernails or toenails, screw the top on a toothpaste tube, cut his own meat, open a jar, pull

heavy dishes and pans in or out of the oven, change diapers, carry his children up the stairs, hold

a pen or pencil in his right hand, or perform certain basic household chores and repairs.

Moreover, in addition to those physical inabilities, the plaintiff's mental limitations prevented

him from reading and comprehending test questions for himself, and even with verbal

instructions, the plaintiff was often left confused.  Further, the plaintiff was unable to learn new

skills from a training manual, but rather, required a "hands-on" or combination visual and verbal

approach, and even then, learned at a pace substantially slower than his colleagues.  In fact, an

occupational therapist at the Nemours Foundation had observed the plaintiff and determined that

the following specific limitations:

> Visual figure ground is moderately to severely impaired;
> praxis (motor planning), math computations, size and
> number estimations (*e.g.*, he cannot determine if 25 bottles
> of a certain size fit into a specific box even after repeated
> trials), reading skills, visual memory, and auditory
> processing also seem below expectations, Rob frequently
> does not hear what is being said to him; several times he
> began speaking before the therapist finished talking and
> then did not respond to questions asked.

Id.  Although the plaintiff managed to make himself a productive member of society, it is clear

that he had **substantial** limitations that required accommodation to perform his job.  Id.  By stark

contrast, Plaintiff here fails to establish that there was a single major life activity in which she

was substantially limited, and significantly, Plaintiff admitted that she was able to perform her

job without accommodation:

> Q:    Did you ever have any difficulties performing any
>       of your job duties?
>
> A:    No.
>
> Q:    Never had for your entire time as a human resources
>       clerk any difficulty performing any of your job
>       duties?
>
> A:    No.
>
> Q:    No problem working on the computer?
>
> A:    No.

Q:     No problem reading anything on the computer?

A:     No.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Q:     So then your headaches never prevented you from
       doing your job?

A:     They did not.

Q:     And even though you had to do a lot of reading on
       the computer, your headaches never prevented you
       from doing reading on the computer, correct?

A:     That's right.

(Pl.'s Dep. at 19, 24).

Accordingly, Plaintiff is not disabled and this Court should grant Comcast's

motion for summary judgment on plaintiff's reasonable accommodation claim under the ADA.

**2.     Even If Plaintiff Is Deemed Disabled, It is Clear That She Could
         Perform The Essential Functions of Her Job without Accommodation.**

Even if this Court determines that Plaintiff is disabled under the ADA, it is clear

that she did not require an accommodation to perform her job. As set forth above, Plaintiff

testified at her deposition that she did not have difficulties performing her job. (Pl.'s Dep. at 19,

24). In fact, even after Plaintiff went to her doctor regarding her headaches, she was not given

any work restrictions:

Q:     You continued to work. Were you able to do your
       job?

A:     Yes, I was.

Q:     So you weren't given any work restrictions?

A:     No.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Q:     Now, let's fast forward to this 2002 period at the
       time you told Mr. Mosley that you were having

> headaches. Did you have any work restrictions
> then?
>
> A:    No.
>
> Q:    So you could do your job completely?
>
> A::   Yes.

(Pl.'s Dep. at 34). Thus, Plaintiff did not need an accommodation to perform the essential functions of her job.

### 3.    Plaintiff Never Requested An Accommodation to Perform Her Job.

Even further, Plaintiff **never requested an accommodation**. Without asserting that she sought an accommodation, Plaintiff certainly cannot establish that Comcast failed to provide an accommodation. See Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000) (finding that an employer is not required make a reasonable effort to determine the appropriate accommodation until a plaintiff requests an accommodation); Bell v. Waste Mgmt, Inc., No. 03-992-KAJ, 2004 WL 2451416 (D. Del. Oct. 29, 2004) (granting summary judgment to employer because "Bell has not requested any accommodation as required under the ADA.") (citations omitted) (Jordan, J.). Here, Plaintiff's testimony that she did not seek accommodation was unequivocal:

> Q:    Did you ever seek assistance from anyone to
> perform your job duties as he human resources
> clerk?
>
> A:    No.
>
> Q:    You just told us you were not having any difficulty
> doing your job. Did you tell [Mr. Mosley] you were
> not having any difficulty doing your job during that
> conversation?
>
> A:    I didn't have any difficulty doing my job, what I
> was doing at that time.

> Q:    Did you make any requests of Mr. Mosley?
>
> A:    I did not.

(Pl. Dep. at 19). Thus, Plaintiff simply cannot argue that Comcast failed to accommodate her medical condition.

Indeed, Plaintiff cannot demonstrate that anyone knew that she was allegedly disabled, let alone that she required accommodation. Plaintiff suggests that because she completed Family Medical Leave Act ("FMLA") paperwork, Comcast was on notice that she had an alleged disability. (Response at 15). As a preliminary matter, Plaintiff cannot establish anything more than the fact that benefits administrators were aware that she completed FMLA paperwork. Furthermore, Plaintiff herself testified that she did not know whether Mr. Mosley or Mr. Annone were aware that she completed FMLA paperwork. (Pl.'s Dep. at 33).[1]

Moreover, as the requirements of the FMLA and ADA are completely different, Comcast could not have known of Plaintiff's alleged disability simply because she completed **FMLA** paperwork. The statutes are very different. The FMLA provides leave for a person who is temporarily unable to work. The ADA requires that an individual continue to perform the essential functions of his or her job. Compare 29 U.S.C. § 2601 with 42 U.S.C. § 12101. Thus, Plaintiff's FMLA paperwork, grounded on her inability to work, would not have triggered the interactive process under the ADA, grounded on her ability to work.

Accordingly, Plaintiff's claim under the ADA is clearly deficient and should be dismissed as a matter of law.

---

[1]    In fact, Plaintiff **never used** the FMLA leave that was granted to her. Thus, there would have been no reason for Mr. Mosley, Mr. Annone, or anyone other than the benefits administrators to know of her request for FMLA leave.

### 4.    Plaintiff Fails to Identify a Reasonable Accommodation.

Even now, Plaintiff is unable to identify a **reasonable** accommodation that would have permitted her to perform the essential functions of her job, which, as set forth above, were the functions she performed without accommodation. Rather, in her brief and nowhere else at any time in this case, Plaintiff suggests that the accommodation she would have wanted would have been for Comcast to refrain from criticizing her work. Citing no more than corpus juris secundum, Plaintiff claims that she did not make such a request because it would have been futile. She offers no proof of that.[2] But even more significant is her admission that the criticism of her work was warranted. (Pl.'s Dep. at 88).

To request that an employer refrain from criticism or remove stress from the workforce has been recognized as unreasonable. In Pesterfield v. Tennessee Valley Authority, a case in which the plaintiff became anxious and depressed as a result of criticism, the Sixth Circuit determined that it was unreasonable to expect a work environment free from criticism and stress. 941 F.2d 437 (6th Cir. 1991) cited in Verzeni v. Potter, No. 03-1652, 2004 U.S. App.

---

[2]    Courts have determined an employee's own belief that a request for accommodation will be futile is insufficient. For example, in Loulseged v. Akzo Nobel, Inc., the court found that "the success of the interactive process" should not be placed "at the mercy of either party's subjective beliefs." 178 F.3d 731, 739 (5th Cir. 1999) (citing Harter v. University of Indianapolis, 5 F. Supp. 2d 657, 666 (S.D. Ind. 1998). The court further noted:

> When a breakdown occurs because an employer creates an objectively reasonable perception that the process is clearly at an end, the employer is as well placed as the employee to avoid the situation . . . . But when an employer's statements do not rise to the level, and the breakdown is caused by the subjective spin the employee chooses to place on them, only the employee can prevent the process from collapsing. The employer can hardly be expected to know that the employee is laboring under an unreasonable conviction that further discussion would clearly be futile.

178 F.3d at 739.

LEXIS 18581, at *8-9 (3d Cir. Sept. 2, 2004). In <u>Verzeni</u>, the Third Circuit agreed "with the

many Circuit Courts that have already recognized that the ability to handle reasonably necessary

stress of the job and 'work reasonably well with others are essential functions for any position,

the absence of which would mean than [sic] an employee is not 'otherwise qualified." 2004 U.S.

App. LEXIS 18581, at *8-9 (citations omitted).

Similarly, in <u>Gaul v. Lucent Technologies,</u> in which the plaintiff sought a transfer

from his position because certain individuals caused him stress, the Third Circuit determined that

such an accommodation was inherently unreasonable:

> Based on the foregoing, we conclude that Gaul has failed to
> satisfy his burden for three reasons. First, Gaul's proposed
> accommodation would impose a wholly impractical
> obligation on AT & T or any employer. Indeed, AT & T
> could never achieve more than temporary compliance
> because compliance would depend entirely on Gaul's stress
> level at any given moment. This, in turn, would depend on
> an infinite number of variables, few of which AT & T
> controls. Moreover, the term "prolonged and inordinate
> stress" is not only subject to constant change, it is also
> subject to tremendous abuse. The only certainty for
> AT & T would be its obligation to transfer Gaul to another
> department whenever he becomes "stressed out" by a
> coworker or supervisor. It is difficult to imagine a more
> amorphous "standard" to impose on an employer.

<u>Gaul v. Lucent Techs.,</u> 134 F.3d 576, 581 (3d Cir. 1998).

Likewise here, even if requested, Plaintiff was not entitled to a work environment

free from criticism and stress. If Plaintiff, in fact, required such an environment, then Plaintiff

would have been deemed unqualified under the ADA. Thus, for this reason as well, Plaintiff's

claim fails as a matter of law.[3]

---

[3]    Although Plaintiff now suggests that she did not receive any criticism of her work before
she fainted at work, at her deposition, Plaintiff admitted that she received criticism of her
work in July 2002 – a month before she fainted. (Pl. Dep. at 28).

**B.    Plaintiff Has Failed To Establish A Claim For Wrongful Termination Under Delaware Law.**

Plaintiff also blatantly disregards the applicable facts and case law with respect to her claims that her termination violated public policy and that Comcast falsified records to create fictitious grounds for her termination.  See EEOC v. Avecia, Inc., No. 04-3396, 2005 U.S. App. LEXIS 22157, at *6 (3d Cir. October 13, 2005) (citing Lord v. Souder, 748 A.2d 393, 400 (Del. 2000)).  Plaintiff's claims are unsupportable.

As set forth in Comcast's motion for summary judgment, for Plaintiff to establish a claim for wrongful termination, she must demonstrate that Comcast's acts amounted to fraud. (Mot. for Summ. J. at 14-15).  Despite Plaintiff's bald assertions to the contrary, Plaintiff has not presented a shred of evidence to demonstrate that Comcast falsified her work record.  By contrast, at her deposition, Plaintiff admitted that the she made mistakes, and, therefore, she cannot refute that criticisms were justified:

> Q:    Were [the criticisms] about things that actually happened at work?
>
> A:    Yes.
>
> Q:    So they were criticisms of work that you had done the day before?
>
> A:    Or that same day.

(Pl. Dep. at 88).  Indeed, Plaintiff further admitted that she was not a perfect employee, and that it was **her** belief that the criticisms of her work were excessive "nit-picking."  (Pl. Dep at 86-88). Thus, Plaintiff clearly cannot demonstrate that Comcast engaged in fraud.  See, e.g., Reed v. Agilent Techs., Inc., 174 F. Supp. 2d 176, 191-92 (D. Del. 2001) (finding that "vague assertions that [a general manager] 'distorted the meanings of documents and events'" was insufficient

evidence to demonstrate that his employer manufactured false evidence against him in light of his admissions that he acted without authority on numerous occasions).

Moreover, even if Plaintiff could prove the existence of fraud, Plaintiff's Response fails to demonstrate that she was terminated, let alone that it was related to poor work performance. Plaintiff again ignores relevant case law. Specifically, in Brooks, as here, the plaintiff alleged that his employment was terminated because of a falsified performance evaluation. Brooks v. Fiore, No. 00-803-GMS, 2001 U.S. Dist. LEXIS 16345, at *22 (D. Del. Oct. 11, 2001). The court granted summary judgment for the employer because there was undisputed evidence that Plaintiff was terminated for reasons unrelated to his allegedly falsified performance evaluation. Id.

Likewise, here Plaintiff has provided no evidence to demonstrate that her termination was related to poor performance. To the contrary, Plaintiff admitted in her deposition that she understood that her position was being eliminated because of a reorganization, not because of any performance issues. (Pl. Dep., Ex. A, at 48, 59).

Moreover, Plaintiff fails to even address the fact that she was offered another position – a position that **she declined**. (Pl. Dep., Ex. A, at 49, 50, 62). This fact is also fatal to her claim. In Leyva v. Computer Sciences Corporation, this Court determined that an employee who could not demonstrate she was terminated could not argue that the employer created fictitious grounds for the termination:

> Plaintiff does not describe what records were manipulated. More importantly, however, plaintiff was not terminated. The plaintiff cannot now argue that Defendant created fictitious grounds for termination when she is the one who, by her resignation, ended the employment relationship.

No. 04-002-KAJ, 2005 U.S. Dist. LEXIS 1551 (D. Del. Jan. 25, 2005) (Jordan, J.) Similarly, Plaintiff has not established, nor can she, that Comcast management manipulated her record to

justify her termination, when, in fact, it is undisputed that Comcast offered to continue to employ her and she rejected that offer.

Nor is there a supportable claim that there was a wrongful termination claim based on public policy. (Compl. at ¶¶ 30-32). Plaintiff does not dispute the Third Circuit's determination in Avecia that Delaware's employment discrimination law was the "sole remedy for an aggrieved employee." EEOC v. Avecia, Inc., No. 04-3396, 2005 U.S. App. LEXIS 22157, at *6 (3d Cir. October 13, 2005). Rather, Plaintiff tries to circumvent its applicability to her case because she believes that it should not be applied retroactively. Plaintiff cannot avoid the fact that the Third Circuit explicitly held otherwise, ruling that the 2004 amendment applied retroactively to wrongful discrimination claims filed before its enactment. Id. at *8 ("Moreover, when the bill is read in light of the sponsor statement....it is clear that the 2004 Amendment is meant to be retroactive.").

Thus, Plaintiff's claim for wrongful termination based on the implied covenant of good faith and fair dealing is clearly deficient and should be dismissed as a matter of law.

## III.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant
their Motion for Summary Judgment and enter any further relief deemed just and appropriate by
this Court.

Respectfully submitted,

Dated:  December 21, 2005          BALLARD SPAHR ANDREWS & INGERSOLL, LLP

_____

William M. Kelleher (No. 3961)
919 Market Street, 12th Floor
Wilmington, DE 19801
Phone:  (302) 252-4465
Facsimile:  (302) 252-4466

-and-

John B. Langel, Esquire
Farrah I. Gold, Esquire
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

Attorneys for Defendants