IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERNESTINE PARKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | C.A. No.:     04-344 KAJ |
| COMCAST CORPORATION, *et al.* | § | |
| | § | |
| Defendants. | § | |

## JOINT PRETRIAL ORDER

The parties, by their undersigned counsel, and pursuant to Local Rule 16.4(d),

submit the following Joint Pretrial Order for the Court's approval:

**Plaintiff's Counsel:**

Victor Battaglia
Phil Bartoshesky
Biggs & Battaglia
921 Orange Street
P.O. Box 1489
Wilmington, DE 19899

**Defendants' Counsel:**

William M. Kelleher                          John B. Langel
Ballard Spahr Andrews & Ingersoll, LLP       Farrah I. Gold
919 Market Street, 12th Floor                Ballard Spahr Andrews & Ingersoll, LLP
Wilmington, DE 19899                         1735 Market Street, 51st Floor
                                             Philadelphia, PA 19103

## I.     NATURE OF THE CASE

This is an employment case in which Plaintiff, Ernestine Parker, alleges

discrimination under the Americans with Disabilities Act ("ADA") and wrongful termination

under Delaware state law.  In Count I, Plaintiff alleges that she could have continued to work

with a reasonable accommodation and that Defendants refused to make a reasonable

accommodation for her.  In Count II, Plaintiff alleges that Defendants wrongfully terminated her employment in violation of Delaware public policy and that Defendants manufactured false justifications to terminate her employment.

## I.    JURISDICTION

A.    This is an action for money damages based upon the Plaintiff's claim that her employment with Defendant Comcast was unlawfully terminated.

B.    The jurisdiction of this Court is not disputed and Plaintiff's claims are brought to address rights secured by the laws of the United States pursuant to 28 U.S.C. §§1331 and 1343 and pursuant to the Americans With Disabilities Act ("ADA") (42 U.S.C. §1201, *et seq.*).  The Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367.

## II.    UNCONTROVERTED FACTS

1.    Plaintiff Ernestine Parker (hereinafter "Plaintiff") was hired by Suburban Cable Company as a receptionist at the company's New Castle County Call Center in 1998.

2.    Suburban Cable Company subsequently was purchased by Comcast Cable Corporation (hereinafter "Comcast") in 2000.

3.    Plaintiff was able to read and use the computer at work.

4.    Plaintiff regularly worked from home at night and on weekends.

5.    On or about January 26, 2001, Plaintiff submitted an FMLA certification.

6.    Plaintiff chose not take a leave of absence through the FMLA process.

7.    On or about June 25, 2001, Plaintiff was offered the position of Human Resources Clerk, which she accepted on or about June 26, 2001.

8.    At the end of June 2002, William Mosley, Human Resources Manager, completed a draft annual performance evaluation for Plaintiff.

9.    Mr. Mosley's draft written evaluation of Plaintiff's performance was submitted to Philip Annone, Director of Human Resources, who changed some of Plaintiff's ratings.

10.    In July 2002, Mr. Mosley met with Plaintiff several times to discuss her job requirements and performance.

11.    On August 1, 2002, Plaintiff fainted at work.

12.    Mr. Mosley drove Plaintiff home from work that day.

13.    On August 13, 2002, Plaintiff submitted an FMLA certification.

14.    Plaintiff's FMLA request was approved and, on or about September 13, 2002, the Benefit's Coordinator, Holly McCracken, sent an e-mail to Plaintiff notifying her of that approval.  Mr. Mosley and Mr. Annone were copied on that e-mail.

15.    In a Memorandum to Fidel Edwards, John McGowan and Vince Johnson dated August 27, 2002, Mr. Annone discussed his recommendations regarding changes to the organization of the Human Resources Department of the New Castle Call Center.

16.    By mid-November 2002, Plaintiff obtained a part-time sales position at Macy's Department Store.

17.    Plaintiff presently continues to work at Macy's on a part-time basis.

18.    On September 30, 2002, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") through the Delaware Department of Labor ("DDOL") charging she was discriminated against on the basis of a disability.

3

19.     Plaintiff was issued a Right to Sue Letter from the EEOC dated March 3, 2004.

20.     Plaintiff filed a Complaint in this Court on May 27, 2004 asserting claims against Comcast under the ADA as well as a state law claim for wrongful termination of her employment.

## III.     AGREED TO ISSUES OF LAW

The parties agree that the issues of law to be decided by the Court have been set forth in the Defendants' Motion for Summary Judgment and in the parties' Motions *in Limine* as described in paragraph IX, *infra*.

## IV.     WITNESSES

A.     List of witnesses Plaintiff expects to call:

1.     Expert witnesses – Dr. Robert Minnehan(economist);  Dr. Fallorina(treating healthcare provider); Dr. Carunchio (treating healthcare provider).

2.     Non-Expert witnesses – Plaintiff, Philip Annone, William Mosley, Alberina Ziemba, Kara Pietrowicz, Edwin Gonzalez, Donna Minor, Barbara Edwards, Angela Wilson, Michael Patterson, Holly McCracken, Bethany Pace, Al Pedrick and Michael Sherwood Plaintiff reserves the right to call any witness listed by Defendants.

B.     List of witnesses Defendant expects to call, including experts:

1.     Expert witness

a.     Brian Sullivan

2.     Non-expert witnesses

     a.     Plaintiff Ernestine Parker

     b.     William Mosley

     c.     Philip Annone

     d.     Fidel Edwards

     e.     Brian Lambert

     f.     Holly McCracken

     g.     Michael Patterson

     h.     Bethany Pace

Defendants reserve the right to call any witness identified by Plaintiff.

     C.     Rebuttal Witnesses – Each party may call such rebuttal witnesses as may be necessary, without prior notice thereof to the other party.

## V.    EXHIBITS

**Plaintiff**

See Plaintiff's proposed exhibit list attached.

Plaintiff reserves the right to submit any exhibits listed by Defendant.

**Defendants**

     DX-1  Open Door Policy

     DX-2  Non-Discrimination/Harassment Policy

     DX-3  Employee Handbook

     DX-4  Letter from V. Battaglia to M. Carunchio dated September 23, 2002 [P233]

     DX-5  Plaintiff's Medical Records [P237-39, 243-44]

DX-6    FMLA Paperwork dated January 26, 2001 [Comcast-Parker 228-31]

DX-7    FMLA Paperwork dated September 5, 2002 [Comcast-Parker 217-21]

DX-8    E-mail from B. Pace to E. Parker dated September 13, 2002

DX-9    Correspondence from July 23, 2002 from B. Pace to M. Patterson [Comcast-Parker 0012]

DX-10   Memo from B. Pace to B. Mosley dated July 24, 2002 [Comcast-Parker 0008-0010]

DX-11   Project/Task Request Review dated July 28, 2002 [Comcast-Parker 0013]

DX-12   Memo from B. Mosley dated August 16, 2002 [Comcast-Parker 0164]

DX-13   Revised Notes dated September 5, 2002 [Comcast-Parker 191]

DX-14   Macy's Documentation [P251-75]

DX-15   Documents reflecting job search [P146-59]

DX-16   Plaintiff's Answers to Interrogatories

DX-17   Deposition Transcript of Ernestine Parker

Defendants reserve the right to introduce any exhibits identified by Plaintiff.

## VI.    DAMAGES

Plaintiff's itemized statement of damages:

1.      As of July 1, 2005, Plaintiff's past economic loss (back pay) amounts to $49,802.00.

2.      Her future economic loss (front pay) starting in July 2005 and projecting work until age 62, amounts to $144,919.00 and projecting to work until age 67, amounts at $136,475.00.

These damages claims are based upon the opinion of Dr. Robert F. Minnehan, Plaintiff's consulting expert economist.  Defendants dispute this calculation of Plaintiff's damages.

6

## VII.    BIFURCATED TRIAL

Not applicable.

## VIII.   TRIAL BRIEFS

### DEFENDANT

### A.    The Court Must Exclude the Delaware Department Of Labor Notice of Reasonable Cause.

Plaintiff's proposed exhibits include the Notice of Reasonable Cause issued by the Delaware Department of Labor ("DDOL"). The DDOL found probable cause to support Plaintiff's allegations of discrimination. Defendants move in limine to preclude the admission of the DDOL Notice of Reasonable Cause because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and consideration of undue delay and waste of time under Rule 403. In addition, the Notice contains inadmissible hearsay and does not fall within any hearsay exception.

In Coleman v. Home Depot, Inc., the Third Circuit determined that courts have discretion to determine whether an EEOC Letter of Determination is more prejudicial than probative under Rule 403. 306 F.3d 1333, 1345 (3d Cir. 2002). The Third Circuit explained that the EEOC's Letter of Determination was properly excluded because it contradicted the evidence put forth at trial, and therefore, "a great deal of time would have had to have been consumed to counter the report's conclusion" regarding discrimination. Id. at 1346. Thus, the Third Circuit affirmed the District Court's conclusion that the probative value of the EEOC Letter of Determination was substantially more prejudicial than probative. Id. at 1347; see also

7

<u>Starceski v. Westinghouse Elec. Corp.</u>, 54 F.3d 1089, 1100 (3d Cir. 1995) (upholding district court's exclusion of the EEOC determination).

Similarly, the court in <u>Ofsharick v. GMAC Commercial Mortgage Corporation</u> held that an EEOC Letter of Determination was inadmissible because the Letter was more prejudicial than probative. 2003 U.S. Dist. LEXIS 15646, No. 01-CV-3427, at * 18-19 (E.D. Pa. Jul. 17, 2003). The court found problems with the Letter because it included inaccurate facts and an incorrect conclusion. <u>Id.</u> Thus, the court determined that the "roughly three-page EEOC Letter ha[d] little probative value." <u>Id.</u>

Many circuit courts have discussed at length the reasons for excluding EEOC or state agency determinations. In <u>Hall v. Western Prod. Co.</u>, the Tenth Circuit described the risk of unfair prejudice by stating that admitting the report into evidence "would be to suggest to the jury that it should reach the same conclusion" as the state agency. <u>Hall v. Western Prod. Co.</u>, 988 F.2d 1050, 1059 (10th Cir. 1993) (affirming the trial court's decision to exclude state agency report that found no age discrimination); <u>see also</u> <u>Tulloss v. Near North Montessori School, Inc.</u>, 776 F.2d 150, 154 (7th Cir. 1985) (affirming exclusion of reasonable cause determination in a bench trial because admission of determination would be like "saying 'this has already been decided and here is the decision.'").

Further, in <u>Spruill v. Winner Ford of Dover, Ltd.</u>, the court held that a state agency decision was inadmissible under Rule 403. 175 F.R.D. 194 (D. Del. 1997). In <u>Spruill</u>, the state agency had concluded that "[the defendant] discriminated against [the plaintiff] on the basis of race, that [the plaintiff] was constructively discharged, and that [the defendant's] actions violated Delaware law." <u>Id.</u> In excluding the use of the administrative report at trial, the <u>Spruill</u>

court noted that the admission of the EEOC and state agency determinations of discrimination is "tantamount to saying this [case] has already been decided and here is the decision." Id. (quoting Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc., 867 F. Supp. 686, 692 (N.D. Ill. 1994)). The court concluded that the admission of an agency determination that includes various legal conclusions intrudes the province of the court, which is responsible for "[i]nstructing the jury on the law." Id. The court further held that the agency's determination was "extremely prejudicial and also is likely to lead to significant jury confusion." Id.

Furthermore, the Notice of Reasonable Cause constitutes inadmissible hearsay because the determination lacks trustworthiness and therefore falls outside the hearsay exception in Rule 803(8)(C). See Fed .R. Evid. 803(8)(C); Coleman, 306 F.3d at 1341-42 (discussing the application of Rule 803(8)(c) to the proposed admission of an EEOC finding). Federal Rule of Evidence 803(8)(C) provides an exception to the hearsay rule for "[r]ecords, reports, statements or data compilations, in any form, of public offices or agencies, setting forth . . . (c) in civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances, indicate lack of trustworthiness." Fed. R. Evid. 803(8)(C) (emphasis added). In order for the court to determine if there is a lack of trustworthiness in either the finding or the testimony, the court must consider certain factors, including (1) the timeliness of the investigation, (2) the investigator's skill and experience, (3) whether a hearing was held and the level it was conducted, and (4) possible bias or motivation problems. See Coleman, 306 F.3d at 1341-42. In determining that an investigation was untrustworthy, the Coleman court discussed other factors, such as whether the findings were a products of a hearing, the extent to which appropriate

9

safeguards were used or followed (such as due process), and the extent to which there is an ascertainable record on which the findings were based.  See id. at 1342 n.4 (citation omitted).

Likewise here, the Notice of Reasonable Cause should be excluded.  The Notice was the result of, at best, an incomplete investigation and contradicts all competent evidence in this case, including Plaintiff's sworn deposition testimony.  The DDOL failed to hold a hearing, to interview anyone from Comcast, to follow any safeguards or due process, or to produce a record.  In fact, the Notice does not set forth whom the DDOL interviewed, if anyone, before making its determination.  The Notice, therefore, lacks trustworthiness and should be excluded.

**Plaintiff's Response:**

Defendant objects to the admission of the Determination of the Delaware Department of Labor ("DDOL Determination") claiming it does not fall within the hearsay rule exception set forth at FRE 803(8) and that the DDOL Determination should be excluded under FRE 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or considerations of undue delay and waste of time.

The standards for admissibility of reports of a governmental agency acting pursuant to authority granted to it by law (such as the DDOL Determination here) in the Third Circuit is set forth in Coleman v. Home Depot, Inc.. 306 F.3d 1333 (3d Cir. 2002).  The first step in the analysis is whether the governmental report falls within the FRE 803(8)(C) exception to the hearsay rule.  See Cambra v. The Restaurant School, 2005 WL 2886220 (E.D. Pa. 2005).  As the Coleman Court noted, reports of a governmental agency are normally presumed to fall within the 803(8)(C) hearsay exception and the party opposing admission of such report must show the report's untrustworthiness.  Coleman, supra, 306 F.3d at 1343, footnote 5.

10

In the present case, Defendant simply asserts the DDOL Determination is untrustworthy because it was "…the result of, at best, an incomplete investigation and contradicts all competent evidence in this case, including plaintiff's sworn deposition testimony." There is no support for Defendant's assertion. The DDOL Determination does not contradict the evidence in this case, but rather contradicts only the Defendant's version of the evidence. Defendants offer no basis for its claim of an incomplete investigation by the DDOL.

In <u>Coleman</u>, the Court indicated the factors which should be considered in evaluating the trustworthiness of a report, include "…(1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held in a level at which conducted; (4) possible motivation problems". The Court also stated, "Most notably, a report may be untrustworthy 'if the report appears to have been made subject to a suspect motivation. For example, if the public official or body who prepared the report has an institutional or political bias and the final report is consistent with the bias.'" <u>Coleman</u>, *supra*, 306 F.3d at 1342.

In the present case, it is not disputed the investigation was timely nor that the DDOL investigators have special skill or experience in this field. The most important factor, that the report may have been subject to a suspect motivation, clearly is not present in this case. The DDOL determination clearly meets the test of trustworthiness under Rule 803(8)(C). The Defendant's simple assertion that it is not trustworthy is not a sufficient record to remove the DDOL Determination from the hearsay exception set forth in Rule 803(8)(C). *See* <u>Spruill v. Winner Ford of Dover, Ltd.</u>, 175 F.R.D. 194, 197(D.Del 1997).

The DDOL Determination should also not be excluded from evidence under FRE 403. The Determination's probative value is clearly not substantially outweighed by the danger of

unfair prejudice, especially in that this case is set for a non-jury trial trial.  In all of the cases cited

by Defendant, the determinative factor under the Rule 403 analysis was whether there would

have been unfair prejudice or confusion to a jury.  As the Court in <u>Cambra</u>, *supra,* indicated,

"…the difference between a bench and a jury trial may affect the probative/prejudice balance

under Rule 403."  The Court continued, "A jury may not be aware of the 'limits and vagaries of

administrative determinations' and thus be unable to give the Letter its proper weight and no

more."  <u>Cambra</u>, *supra,* at 4 quoting <u>Barfield v. Orange County</u>, 911 F.2d 644, 651 (11th Cir.

1990).  *See also,* 22 *Wright & Graham*, Federal Practice and Procedure, § 5214 (2005

Supp.) (noting that the Rule 403 analysis is different in a bench trial the judge in a non-jury trial

is able to give the evidence its true probative value and especially in cases where the trial judge

would hear the disputed evidence in ruling on a motion to exclude under Rule 403.)

According to <u>Coleman</u>, *supra,* the determination of whether a governmental report, such

as the DDOL Determination, is admissible must be made on a case by case basis.  In the present

case, especially where there is no danger of confusion of the jury, the DDOL Determination's

probative value is clearly not substantially outweighed by the danger of unfair prejudice, and the

report is admissible.

**B.** **The Court Should Strike Barbara Edwards, Angela Wilson, Alberina Ziemba, Kara Pietrowicz, Edwin Gonzalez, and Donna Minor From Plaintiff's Witness List and Exclude Any Evidence <u>Related to Gonzalez, et al. v. Comcast, et al., 03-445 KAJ.</u>**

This Court should preclude Plaintiff from attempting to inject the allegations and

evidence from Plaintiff's counsel's prior litigation, <u>Gonzalez et al. v. Comcast</u> ("<u>Gonzalez</u>")[1],

---

[1]     <u>Gonzalez</u> refers to <u>Gonzalez et al v. Comcast</u> as well as <u>EEOC and Edwards v. Comcast</u> and <u>EEOC and Wilson v. Comcast</u>, all three of which were related and pending before this Court.

because the evidence is irrelevant, prejudicial, would confuse the issues, and would significantly prolong this trial with unnecessary allegations from an unrelated case. For the same reasons, this Court should preclude the testimony of the following witnesses, all of whom were plaintiffs in the prior litigation and were represented by Plaintiff's counsel: Barbara Edwards, Angela Wilson, Alberina Ziemba, Kara Pietrowicz, Edwin Gonzalez, and Donna Minor. As Ms. Parker admitted at her deposition, these witnesses have absolutely no information about her allegations -- they had separated from employment long before the events of this case. Accordingly, the evidence and testimony are inadmissible under Federal Rules of Evidence 401, 402, 403, and 404(b).

In <u>Gonzalez</u>, the plaintiffs raised allegations of race discrimination and retaliation over their separations from employment on January 4, 2002. Comcast employees who separated from employment on January 2002 cannot possibly comment on Plaintiff's allegations that (1) she became disabled under the ADA in the summer and fall of 2002; (2) Defendants failed to reasonably accommodate her disability in the summer of 2002; or (3) that Comcast wrongfully terminated her employment when it eliminated her position in November 2002. Indeed, all of Plaintiff's allegations involve events well after the separation from employment of the Gonzalez plaintiffs. Nonetheless, Plaintiff appears intent on confusing the issues and wasting time by injecting the allegations of <u>Gonzalez</u> into this litigation. This can be the only explanation for why Plaintiff has listed all six <u>Gonzalez</u> plaintiffs as witnesses. Simply stated, <u>Gonzalez</u> is irrelevant.

On this very point, Ms. Parked confirmed that the witnesses are irrelevant when she admitted in her deposition that the Gonzalez witnesses have no information about her allegations of disability discrimination, as follows:

> Q:    All right. Question one asks you to identify persons having
>        knowledge or information related to the allegations in your

complaint.  You have identified a number of people.  I'm going to take you through each of those persons you identified.  And I'm going to ask you what information you claim each person has regarding the allegations in your complaint.  Okay?

**A:**  **Okay.**

Q:  So please tell me what Mr. Gonzalez knows about your allegation that you were discriminated against because you had chronic headaches?

**A:**  **Mr. Gonzalez was terminated at the time that Angela was terminated I don't recall having a conversation with him after that.**

Q:  All right.  So then I'll ask you again.

What knowledge or information of facts relating to your allegation that you were discriminated against on the basis of your disability does Mr. Gonzalez have?

**A:**  **I don't know.**

Q:  So from what you're telling me today, he has no information based on your knowledge?

\*\*\*

**A:**  **I don't know.  He may.**

Q:  He may.  But can you give any specifics?

**A:**  **No.**

Q:  Donna Minor.  Could you tell us what knowledge or information she has relating to your allegation that you were discriminated against on the basis of chronic headaches?

\*\*\*

**A:**  **I don't know what she knows.**

Q:  So when we asked the question, when defendant Comcast asked the question for you to identify persons having

14

knowledge or information of facts relating to he allegations in your complaint, why did you identify Ms. Minor?

A:    **I don't know.**

Q:    Kara Pietrowicz, P-i-e-t-r-o-w-i-c-z. Can you tell us what knowledge or facts she has relating to the allegation in your complaint that you were discriminated against because you have chronic headaches?

A:    **I never spoke with any of the individuals with the exception of Donna and Alberina after they left.**

Q:    All right. What knowledge or information does Donna have about the allegation in your complaint that you were discriminated on the basis of your having chronic headaches?

A:    **I can't say what she knows.**

Q:    And Alberina, what does she know?

A:    **I don't know.**

Q:    Look through all 32 names, please, so we don't go through these one by one, and tell us if any of them have any knowledge or information, to the best of your knowledge, of facts relating to the allegation in your complaint that you were discriminated against on the basis that you have chronic headaches?

A:    **I don't know**

(Plaintiff's Dep. at 43-46). Thus, even Plaintiff is unaware of any information that the Gonzalez plaintiffs can provide with respect to her allegations of disability discrimination.

Besides the disconnect in terms of timing and witnesses, the Gonzalez evidence should be barred because a plaintiff may not use evidence of one kind of discrimination to prove discrimination of another type. See Kelly v. Boeing Petroleum Servs., Inc., 61 F.3d 350, 357-360 (5th Cir. 1995) (holding comments pertaining to race, sex and origin have no tendency to prove

disability discrimination and therefore were rightly excluded pursuant to Federal Rules of Evidence 401 and 403); <u>Rauh v. Coyne</u>, 744 F. Supp. 1181, 1183 (D.D.C. 1990) (finding that plaintiff alleging gender discrimination may not introduce evidence of racial discrimination because it is not relevant under Federal Rule of Evidence 401 and would result in unfair prejudice outweighing any probative value pursuant to Federal Rules of Evidence); <u>see also</u> <u>Rivera v. Baccarat</u>, No. 95 CIV-9478, 1997 U.S. Dist. LEXIS 19911, at *4-5 (S.D.N.Y. Dec. 15, 1997) (granting motion in limine, holding allegations of race and gender discrimination are irrelevant to claims of national origin discrimination and are inadmissible); <u>Simonetti v. Runyon</u>, No. CIV. A. 98-2128, 2000 U.S. Dist. LEXIS 11407, at *16-17 (D.N.J. Aug. 7, 2000) aff'd, 276 F.3d 579 (3d Cir. 2001) (holding allegations of race and religious discrimination irrelevant to disability discrimination claim).  Ms. Parker's allegations are specific to a failure to provide reasonable accommodation in the fall of 2002, and allegations of race discrimination and retaliation in January 2002 are irrelevant.

    Defendants therefore respectfully request that this Court preclude all evidence from the Gonzalez litigation, including the testimony of the six Gonzalez plaintiffs.

**Plaintiff's Response:**

    Defendant has moved to strike from Plaintiff's witness list, Barbara Edwards, Angela Wilson, Alberina, Ziemba, Kara Pietrowicz, Edwin Gonzalez and Donna Minor claiming their testimony would not be relevant to Plaintiff's claims and would unfairly inject considerations present in a different litigation into this case.

    The gist of Plaintiff's case is that Defendant failed to accommodate her disability and has falsely claimed that the termination of Plaintiff's employment was for valid business reasons.

16

Contrary to Defendant's assertions, all of the listed witnesses do have knowledge concerning the allegations made in Plaintiff's Complaint. Plaintiff was part of the HR team headed by Angela Wilson. Ms. Wilson, along with Ms. Ziemba, Ms, Petrowicz, Ms. Minor and Mr. Gonzalez all worked with Plaintiff for a significant period of time. Defendants quotes from Plaintiff's deposition are very misleading. Defendant had asked in an interrogatory for Plaintiff to identify individuals having any knowledge or information relating to the allegation in Plaintiff's Complaint. She listed, among others, the witnesses which Defendant now attempts to strike because those individuals worked with Plaintiff, had knowledge of her abilities and her disability and had knowledge of the workings of Comcast's New Castle County Call Center and its HR Department. These were part of the allegations in Plaintiff's Complaint.

However, at her deposition, Plaintiff was asked specifically what these individuals knew about the allegation in Plaintiff's Complaint that she was discriminated against because she had chronic headaches. At her deposition Plaintiff answered that she did not know what information these individuals would have relating to her allegation that she was discriminated because of her disability. Not only does her deposition answer not conclusively establish these people have no such knowledge, but also her answer at her deposition does not establish, in any way, that the listed witnesses would not have some information concerning Plaintiff's disability, her ability to handle her job and other information relevant to Plaintiff's claim.

Moreover, part of this case is Defendant's assertion that Plaintiff was terminated as a valid business decision. Plaintiff must be entitled to present her evidence that Defendants did not act for a valid business decision, but rather her termination was related to Defendant's refusal to accommodate her disability. Plaintiff should be able to present evidence that the reason

17

Defendant did not desire to accommodate Plaintiff's disability was because, at least in part, Plaintiff was part of the HR team headed by Angela Wilson and Defendants wanted to remove any trace of Ms. Wilson's supporters from their employment, even almost a year after Wilson and her team had been terminated. Plaintiff must be permitted to present evidence in the form of testimony of these listed individuals as to Plaintiff's abilities, her disability and the atmosphere present at Comcast in the HR Department.

### C. The Court Should Exclude Evidence of Alleged <u>Misrepresentations By Philip Annone.</u>

Plaintiff has identified on her exhibit list the deposition transcript of Philip Annone from the case of <u>Gonzalez, et al. v. Comcast, et al.</u>, 03-445 KAJ. As Plaintiff's counsel tried in the <u>Gonzalez</u> case, Plaintiff seemingly intends to offer evidence that Mr. Annone made misrepresentations on his employment application with respect to his educational background and salary at his prior employer. These alleged misrepresentations occurred as part of Mr. Annone's application for employment with Comcast in or around September 2001. This Court granted Defendants' motion in limine to preclude this same evidence in the <u>Gonzalez</u> case, and these allegations are even further removed from Ms. Parker's case.

This Court should find, as it found in <u>Gonzalez</u>, that Mr. Annone's alleged misrepresentations are not admissible at trial. Specifically, Mr. Annone's alleged misrepresentations on his Comcast application (1) are not relevant to whether Defendants failed to reasonably accommodate Plaintiff, (2) cannot be used to demonstrate a propensity for dishonesty, and (3) are unduly prejudicial to Defendants. Thus, the alleged misrepresentations should be deemed inadmissible pursuant to Federal Rules of Evidence 402, 404(b), or 403.

18

As an initial matter, Mr. Annone's alleged misrepresentations are not relevant. Relevant evidence is defined in Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is not admissible at trial. Fed. R. Evid. 402. The alleged misrepresentations on Mr. Annone's application do not have <u>any</u> bearing on the facts of this case.

Moreover, the admission of Mr. Annone's alleged misrepresentations would violate Federal Rule of Evidence 404(b). Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Here, Plaintiff cannot introduce evidence of Mr. Annone's alleged misrepresentations to demonstrate a propensity for him to commit similar bad acts.

Accordingly, the Court should exclude Mr. Annone's deposition transcript, specifically including any testimony regarding his alleged misrepresentations to Comcast.

**Plaintiff's Response:**

Defendant has moved to exclude evidence of alleged misrepresentations by Philip Annone, claiming they are not relevant to the claims of Plaintiff in the present case. Both parties in this case have listed Mr. Annone as a witness. Clearly his credibility is at issue. Mr. Annone testified in his deposition in this case that Plaintiff's termination was part of a reorganization and therefore a valid business decision. Plaintiff should have the right to test Mr. Annone's credibility.

It is FRE 607 and 608 which control how the credibility of a witness is tested, not Rule 404. Plaintiff is not offering evidence of Mr. Annone's misrepresentations to prove his character in order to show he acted in conformity therewith. (FRE 404(b)) Rather, the evidence is being offered as to his credibility. Lying on a job application is recognized as probative of truthfulness of a witness. (*See* 28 *Wright & Gold*, Federal Practice and Procedure §6118.)

In addition, as set forth in Plaintiff's response to Defendant's Motion *in Limine* regarding striking of Plaintiff's listed witnesses (Part B above), it was Mr. Annone who was given the final authority by Comcast management to terminate the employment of Angela Wilson and her HR team at the New Castle Call Center. Evidence relating to Mr. Annone's decision to terminate the entire team except for Plaintiff, and the basis for his decision not to fire Plaintiff until 6 or 8 months after the rest of the team's employment had been terminated are clearly relevant to Plaintiff's case.

**D.    The Court Should Strike Al Peddrick from Plaintiff's Witness List And Preclude Admission of the Deposition Transcript of Al <u>Peddrick from Gonzalez.</u>**

In yet another attempt to inject the <u>Gonzalez</u> case into this litigation, Plaintiff has identified former Comcast employee Al Peddrick as a witness as well as his deposition testimony from the <u>Gonzalez</u> case as an exhibit. Mr. Peddrick is the former Senior Vice President, Human Resources, of Comcast Cable Communications, serving as the top human resources executive for all of Comcast Cable, which now has more than 70,000 employees. Mr. Peddrick has no connection whatsoever with Ms. Parker's allegations. Ms. Parker's allegations are limited to personnel within the New Castle Call Center and simply do not involve a top corporate

20

executive like Mr. Peddrick.  Comcast has not identified Mr. Peddrick as a decision-maker, and Ms. Parker is unaware of any information he may have.

Accordingly, Mr. Peddrick's testimony and deposition transcript from <u>Gonzalez</u> should be excluded.

**Plaintiff's Response:**

Defendant has moved to strike Mr. Al Peddrick as a witness.  As Defendant admits, Mr. Peddrick was the top Human Resources Executive for all of Comcast.  Clearly, for that reason alone, his testimony concerning the policies and procedures Comcast follows in hiring and terminating employees in various HR Divisions within Comcast is relevant to Plaintiff's claim.

More importantly, Mr. Peddrick was part of a management team that in December of 2001 recommended that Mr. Annone fire the entire HR team at Comcast New Castle Call Center.  His testimony and a memorandum dated December 20, 2001 established that Mr. Peddrick was the highest ranking Comcast executive who participated in a meeting at which the group concluded that the HR team at the New Castle Call Center was not capable of performing in accordance with the Business Plan that Phil Annone had developed.  The December 20, 2001 memorandum states, *inter alia*, "While the group recommended that Phil terminate the entire group, Phil was given the ultimate decision to accept or reject this recommendation."

As set forth in Plaintiff's response to Defendant's Motion *in Limine*, to strike Barbara Edwards, Angela Wilson, and her team as witnesses (Part B above) Plaintiff must be able to test fully the Defendant's claim that her termination was part of a valid reorganization.  Plaintiff has asserted that was a false justification and that the true reason for her termination was, at least in part, that she was a member of the HR team headed by Angela Wilson which was marked for

21

termination in December 2001. Defendant refused to accommodate her disability and instead falsely claimed her termination was due to a reorganization. Mr. Peddrick was deeply involved in the decision to terminate Angela Wilson's HR team. The reason Plaintiff was not terminated at that time, and instead Comcast waited for almost a year to terminate Plaintiff, is relevant to Plaintiff's claims in this case.

## IX.    LIMITATIONS, RESERVATIONS AND OTHER MATTERS

Length of Trial – The probable length of trial is 2-4 days. The case will be listed on the trial calendar to be tried when reached.

Mark appropriate box:          Jury _____

Non-Jury ____X__

IT IS ORDERED that this Final Pretrial Order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown. Such modification may be made either on application of counsel for the parties or on motion of the Court.

_____
The Honorable Kent A. Jordan

APPROVED AS TO FORM
AND SUBSTANCE:

22

BIGGS AND BATTAGLIA                    BALLARD SPAHR ANDREWS & INGERSOLL, LLP


/s/ Victor F. Battaglia #156            /s/ William M. Kelleher #3961
Victor F.  Battaglia, Esquire           William M.  Kelleher, Esquire
921 Orange Street                       919 Market Street, 12th Floor
Wilmington, DE 19801                    Wilmington, DE 19801
Attorney for Plaintiff                  Attorney for Defendants

23