IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERNESTINE PARKER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMCAST CORPORATION, a )<br>Pennsylvania corporation, COMCAST )<br>CABLE COMMUNICATIONS, INC., a )<br>Delaware corporation, and COMCAST )<br>CABLEVISION OF NEW CASTLE )<br>COUNTY LLC, a Delaware limited liability )<br>corporation, successor-in-interest to )<br>Comcast Cablevision of New Castle )<br>County Inc., a Delaware corporation, )<br>)<br>Defendants. )<br>)<br>) | Civil Action No. 04-344-KAJ |

## MEMORANDUM OPINION

Victor F. Battaglia, Esq., Philip B. Bartoshesky, Esq., Biggs and Battaglia, 921 Orange Street, P.O. Box 1489, Wilmington, Delaware 19899; Counsel for Plaintiff.

William M. Kelleher, Esq., Ballard Spahr Andrews & Ingersoll, LLP, 919 N. Market Street, 12th Floor, Wilmington, Delaware 19801; Counsel for Defendants.
    Of Counsel:  Charisse R. Lillie, Esq., David E. Brier, Esq., Farrah Gold, Esq., Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, 51st Floor, Philadelphia, Pennsylvania 19103.

March 17, 2006
Wilmington, Delaware

JORDAN, District Judge

## I. INTRODUCTION

Before me is a Motion for Summary Judgment (Docket Item ["D.I."] 41; the "Motion") filed by defendants Comcast Corporation, Comcast Cable Communications, Inc., and Comcast Cablevision of New Castle County, LLC (collectively, "Comcast"). The Complaint by plaintiff Ernestine Parker ("Parker") alleges that Comcast discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq., and wrongfully terminated her employment. (D.I. 1 at ¶¶ 23-33.) Jurisdiction is appropriate under 28 U.S.C. §§ 1331, 1334, and 1367. For the reasons that follow, the Motion will be granted.

## II. BACKGROUND[1]

Parker was hired by Comcast's predecessor[2] on February 8, 1998 as a receptionist, and was promoted to Human Resources Clerk on July 2, 2001. (D.I. 1 at ¶¶ 10-11.) Starting in the year 2000, Parker began to have "chronic, daily headaches" that were "extremely painful." (D.I. 45 at B-3-4, ¶¶ 3-4.) She sought treatment from her family doctors and a neurologist, who have been unable to determine the cause of the headaches. (Id.)

---

[1] The following rendition of background information does not constitute findings of fact and is cast in the light most favorable to the non-moving party.

[2] Parker worked for Suburban Cable Company, which Comcast bought in 2000. (D.I. 1 at ¶ 10.)

1

A.  *Headache Pain and Limitations*

Parker alleges that her headaches affected her in various ways. She claims that the headaches prevented her from exercising, and that she "wasn't able to read, couldn't watch television. [She] wasn't able to sleep." (D.I. 42, Ex. A at 35.) She also claimed that she stopped cooking meals during the week because of her headaches (*id.* at 106), and that she could not clean her house because her headaches were so bad (*id.* at 204-05). Parker asserts that by July of 2002, "the pain was so excruciating I could not sleep, could not do any housework". (D.I. 45 at B-6, ¶ 17.) On August 1, 2002, Parker "passed out while at work due to [her] chronic headache condition and stressful working conditions."[3] (*Id.* at B-6, ¶ 18.)

However, Parker also claims that her headaches did not prevent her from doing her job, even when she had to work from home at night and on the weekends. (D.I. 42, Ex. A at 35, 108-10.) She asserts that she was still able to read, write, and use the computer to do her job. (*Id.* at 111.) Furthermore, she claims that she would write in her journal "[b]ecause it would help [her] to not concentrate on [her] pain." (*Id.* at 127.)

Additionally, Parker took at least two different medications, Zomig and Amitriptyline, for her headaches while at Comcast, and she states that those medications made her feel "somewhat" better. (*Id.* at 193-94.) She states that the

---

[3] Most of the evidence in the record of Parker's headaches consists of Parker's own statements in either her deposition or affidavit. However, the record also contains a document entitled "Certification of Health Care Provider," completed by one of Parker's doctors, that was submitted to Comcast under the Family and Medical Leave Act as documentation of Parker's headaches in early 2001. (D.I. 45 at B-9-12.) Additionally, there is documentation from Comcast of the incident when Parker passed out at work. (*Id.* at B-17-20.)

medications allowed her to work, read a computer monitor, and read better, and that also the medications allowed her to watch TV, go to the movies, cook, and clean. (*Id.* at 194-95.) She also states that if she had not had to work, she could have cooked and cleaned. (*Id.* at 205-06.)

    B.    *Increased Job Responsibilities and Criticisms of Performance*

In early 2002, many of Parker's co-workers in the Human Resources department were fired and replaced. (D.I. 45 at B-67-69.) Parker alleges that, starting in July of 2002, she was assigned additional duties, and criticized almost daily for her work. (*Id.* at B-31.) Parker asserts that the additional work and criticism increased her headaches and that she was assigned those additional duties and criticized because Comcast was trying to force her to quit. (*Id.* at B-6, ¶17.) She claims that the criticisms were "false or extremely overstated." (D.I. 44 at 8.) She further asserts that, despite her informing Comcast that she had chronic daily headaches, and despite her passing out at work, Comcast continued to increase her workload. (D.I. 45 at B-6, ¶¶ 17-21.)

Parker says that she did not ask her superiors at Comcast to decrease her workload, or at least to stop increasing it, because she "was afraid. [She] just tried to do all the work because [she] didn't want to lose [her] job." (D.I. 42, Ex. A at 157.)

Parker was terminated on November 4, 2002. (D.I. 1 at ¶ 22.) Parker was told by her superiors at Comcast that her termination was because of reorganization. (D.I. 42, Ex. A at 48, 62-63.) She was offered another position with Comcast as a customer account executive, but declined to take it. (*Id.* at 50.) Parker alleges that she declined to take it because of "the kind of work that it was" (*id.*), and that the position was offered

to her only after she informed Comcast that she had retained an attorney (*id.* at 64). Parker claims that she thought Comcast actually fired her because of her poor job performance,[4] and that her employment record contained a significant amount of criticism of her performance. (*Id.* at 62-63.) Although Parker alleges in her briefing that the criticism of her performance was overstated and inaccurate (D.I. 44 at 20), when asked why she thought the criticisms were fabricated, her only response was "I don't know".[5] (D.I. 42, Ex. A at 61-62.)

---

[4] At another point in her deposition, however, Parker stated, "I really don't know why they fired me" (D.I. 42, Ex. A at 136), and at yet another point when asked "[w]hat was the reason you were given for your termination?" she responded "[r]eorganization" (*id.* at 48). However, she clearly stated: "I'm not saying I was terminated because of my headaches." (*Id.* at 185.)

[5] Parker testified as follows:
Q: Who do you believe fabricated the reasons for terminating?
A: I don't know.
Q: Do you believe Mr. Mosley fabricated the reasons when he was being critical of your work?
A: I don't know.
Q: And when he was being critical of your work, he was actually sharing with you specific criticisms, correct?
A: That's right.
Q: Did anyone else criticize your work?
A: No.
Q: But you believe that some criticisms came from Ms. Pace?
A: That's right
Q: And do you know what her criticisms were?
A: No.
Q: Do you believe that she was lying about her criticisms?
A: I don't know.
(D.I. 42, Ex. A at 61-62.)

4

## III.  STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## IV. DISCUSSION

Parker makes two separate claims against Comcast.[6] First, she claims that Comcast discriminated against her in violation of the ADA. Second, Parker claims that she was wrongfully terminated by Comcast. Comcast, however, asserts that, with respect to each of these claims, there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.

### A. ADA Claim

To make out a prima facie case of discrimination under the ADA, Parker must show that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). "Disability" under the ADA is defined as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual; [a] record of such an impairment; or being regarded as having such an impairment. 29 C.F.R. § 1630.2 (g).

Here, Parker alleges only that she was actually disabled within the meaning of the act, not that she had a record of a disability or was regarded as being disabled. Thus, she must show that she was substantially limited in a major life activity. "The

---

[6] Originally, the Complaint set forth four causes of action. (D.I. 1.) However, counts three and four, state law claims of intentional infliction of emotional distress and prima facie tort, were dismissed on October 5, 2005. (D.I. 33, 34.) Additionally, the Complaint originally named two individual defendants, who were dismissed from the case in that same Order. (*Id.*)

6

following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2 (j)(2). Parker asserts that she is substantially impaired in the major life activities of sleeping and cleaning.[7] I address each of these claims in turn.

    1.    *Sleeping*

Parker asserts that her headaches were so bad that she was unable to sleep. (D.I. 42, Ex. A at 35.) However, to establish that she is substantially limited in a major life activity, Parker must show that her alleged sleep problems were substantial. She must provide some evidence as to the severity of her impairment, its duration, and its expected long term impact. See 29 C.F.R. § 1630.02(j)(2). Indeed, with respect to sleeping, this evidence is particularly important, as "[d]ifficulty sleeping is extremely widespread." *Cowell v. Suffolk County Police Dept.*, 158 F.3d 635, 644 (2d Cir. 1998). Therefore, courts have required that a plaintiff make a "showing that his affliction is ... worse than is suffered by a large portion of the nation's adult population." *Id.*; *see also Sloan v. City of Pittsburgh*, 110 Fed. Appx. 207, 212 (3d Cir. August 31, 2004)

---

[7] Parker testified at her deposition that she was not substantially impaired in the major life activity of working. (D.I. 42, Ex. A at 34-35 ("Q: So you could do your job completely? A: Yes.").) Furthermore, her testimony at her deposition indicates that she could read, write, work on a computer, watch TV and go to the movies. (*Id.* at 36, 111, 127, 194-95.) Indeed, Parker seems to concede that none of these limitations amount to a substantial impairment in a major life activity, as she stresses only the activities of sleeping and cleaning in her brief. (*See* D.I. 44 at 16-17.)

("Difficulty sleeping is a common problem, and not a limitation of a major life activity unless the plaintiff shows a uniquely severe affliction"); *see also Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1060 (9th Cir. 2005) (denying summary judgment where the plaintiff gave specific details about the severity of his sleeping impairment, including that it "went on for months" and that "[s]ome nights even with the help of medications I could not get to sleep for hours or even at all"). Without such a showing, a plaintiff cannot establish that a limitation he or she suffered in sleeping was substantial. *Cowell*, 158 F.3d at 644.

Here, Parker provides no specific evidence as to insomnia, and no evidence that her problems sleeping were particularly bad. In fact, the only evidence in the record that her sleeping was impaired is her general statements that the pain from her headaches was so bad that she was unable to sleep. (*See* D.I. 42, Ex. A at 35; D.I. 45 at B-6, ¶ 17.) Taking all of Parker's allegations as true, and viewing the record in the light most favorable to her, Parker cannot establish that her sleeping impairment was severe. Thus, as a matter of law, Parker cannot establish that she was substantially impaired in the major life activity of sleeping. *See Parker v. City of Williamsport*, 406 F. Supp. 2d 534, 544-45 n.10 (M.D. Pa. 2005) (granting summary judgment to employer where on a "sparse evidentiary record ... [no] reasonable jury could find that plaintiff is substantially impaired in the major life activity of sleeping.").

  2. *Cleaning and Housework*

Parker also contends that she was substantially limited in the major life activity of cleaning. As to this argument, "courts have generally held that 'cleaning,' or, more

generally, 'doing housework,' does not qualify as a major life activity. Although the EEOC regulations list 'caring for oneself' as a major life activity, courts interpreting this regulation have held that such relates only to basic activities such as washing dishes and picking up trash." *Marinelli v. City of Erie*, 216 F.3d 354, 362 (3d Cir. 2000). Here, Parker has alleged no facts to show that she is substantially limited in the major life activity of "cleaning," as that term has been interpreted by the courts. Such evidence would have to show that she is limited in a way that prevents her from "liv[ing] in a healthy and sanitary environment." *Id.* at 363.

Although Parker asserts in her brief that, with respect to cleaning "she could do nothing" and that "her entire life was affected" by her headaches, her deposition testimony and her affidavit do not support those assertions. In her affidavit, Parker claims that she "could not do any housework and ... had to depend on her husband to do almost all the cooking, cleaning and housework". (D.I. 45 at B-6, ¶ 17.) However, at her deposition, Parker testified that she could not clean, cook or do housework because either she was working at home in the evenings and on weekends, or because she was so tired from work that she could not do any housework.[8] (D.I. 42, Ex. A at 204-06.)

---

[8] After asserting that her husband "did most of the work. He did the cooking, the cleaning, the shopping. He just did everything because I wasn't able to do it[,]" Parker testified as follows:
  Q: You say you weren't able to do it. But this confuses me a bit. You were able to work at least three nights a week at home?
  A: I had to do it.
  Q: So in place of doing the cooking and cleaning, you were able to work at home?
  A: Yes. By him doing that, it gave me time to do it, the strength to do it.
  Q: Okay. If you didn't have to work at home, you would have been able to do it?
  A: If I didn't have to work --
  Q: If you didn't have to do the PAN's at home, you would have been able to cook

Furthermore, Parker testified that "when [she] wasn't at work, [she] didn't do anything stressful. I just wanted to be – my mind to be sharp when I went to work." (D.I. 42, Ex. A at 36.) Thus, Parker claims that she did not cook, clean or shop, but instead saved all of her energy for work. (*Id.* at 36-37.)

Additionally, Parker testified at her deposition that she was taking medications while at Comcast that made her feel somewhat better, and allowed her, among other things, to cook and clean. (D.I. 42, Ex. A at 194.) "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity. To be sure, a person whose

---

and clean and do those things?
    A: No, I wouldn't have been able to do it.
    Q: You could work but not clean?
    A: It was awful. I mean my headaches were so bad, I couldn't do anything.
    Q: How could you work?
    A: I just did. Sheer willpower.
    Q: So you could work?
    A: Yes. You make yourself do what you have to do.
    Q: So why couldn't you have cleaned?
    A: Because I was so tired when I would get off from work.
    Q: You wouldn't be so tired that you couldn't work?
    A: Work comes first.
    Q: All right. If you didn't have to work, couldn't you have done other things?
    A: Yes.
    Q: Okay. And those other things would be like cooking and cleaning and those things?
    A: Yes.
    Q: Your answer to that was yes?
    A: Yes.
    Q: And how soon after you left Comcast were you able to now do cooking and cleaning and those things?
    A: I was better even before I left Comcast because things was [sic] normal again.
    Q: All right. So when you had less stress at work, you immediately were able to do those things at home?
    A: I was better. I was much better.
(D.I. 42, Ex. A at 204-06.)

physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limi[t]' a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83 (1999). Because her medications allowed her to cook and clean, Parker cannot claim that she was substantially limited in these major life activities.

Therefore, even viewing the facts in the light most favorable to Parker, her inability to cook and clean was tied not to her headaches but instead to the fact that she was tired from work or had to work at home. *See supra* at note 8. Moreover, even assuming that her headaches did limit her ability to cook and clean, she was able to do these activities with medication, and therefore her limitation cannot be considered substantial. Thus, as a matter of law, Parker cannot establish that she was unable to care for herself by doing household chores sufficient to live in a healthy, sanitary environment, and, accordingly, she cannot establish that she was disabled.

Even if Parker had established an impairment substantially limiting a major life activity, her ADA claim would still be subject to an adverse summary judgment, since she undercut her claim of discriminatory adverse job action when she testified, "I really don't know why they fired me" (D.I. 42, Ex. A at 136) and "I'm not saying that I was terminated because of my headaches" (*id.* at 185). Thus, even if Parker could establish that she was disabled, she testified that she was not fired because of her disability. Comcast's Motion for Summary Judgment on Parker's ADA claim will therefore be granted.[9]

---

[9] Moreover, Parker never requested a reasonable accommodation from Comcast, as she is required to do under the ADA. *See Jones v. United Parcel Service*,

11

B.  *Wrongful Termination*

In general, employment in Delaware is at-will, and an employee can be fired at any time, with or without cause. *Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000). However, Delaware law recognizes an implied covenant of good faith and fair dealing as a narrow exception to the employment at-will doctrine in four situations: "(i) where the termination violated public policy; (ii) where the employer misrepresented an important fact and the employee relied 'thereon either to accept a new position or remain in a present one'; (iii) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (iv) where the employer falsified or manipulated employment records to create fictitious grounds for termination." *Id.* (internal citations omitted). Here, Parker alleges that Comcast violated the implied covenant of good faith and fair dealing because her termination violated public policy and because Comcast falsified her employment records to create a fictitious ground for termination.

1.  *Public Policy*

An employee "must satisfy a two-part test to demonstrate a breach of the covenant of good faith and fair dealing under the public policy category: (i) the employee must assert a public interest recognized by some legislative, administrative or judicial authority and (ii) the employee must occupy a position with responsibility for advancing or sustaining that particular interest." *Lord*, 748 A.2d at 401. Here, Parker

---

214 F.3d 402, 408 (3d Cir. 2000). She claims that she never requested the accommodation that Comcast "stop [its] harrassment" and "not intentionally exacerbate [her] impairment to force her to resign" because asking for such an accommodation would be futile. (D.I. 44 at 18-19; see also D.I. 42, Ex. A at 157.)

claims that her termination violated public policy because she was terminated based on her disability, in violation of Delaware's anti-discrimination and employment statutes. (D.I. 44 at 20; see also D.I. 1 at ¶ 30.)

The only disability Parker alleges she suffered from was her headaches. However, in her deposition, Parker stated "I'm not saying I was terminated because of headaches. I'm saying that I had headaches, and because of all the interrogation, all the harassment, all the extra work, it just made me sicker because I already had the headaches. It just made me worse." (D.I. 42, Ex. A at 185.) Additionally, at different points in the deposition, Parker asserted that she was terminated because of her poor job performance and that she didn't know why she was terminated. (*Id.* at 48, 60-63.) Never during her deposition did she assert that she was being terminated because of her headaches and, in fact, she affirmatively stated that she was "not saying [she] was terminated because of headaches." (*Id.* at 185.) In short, the evidence from her own mouth is that she was terminated for reasons other than her alleged disability. Even viewing the record in the light most favorable to her, there is no genuine issue of material fact on this point, and judgment as a matter of law will be granted to Comcast on this claim.

    2.    *Falsification of Employment Records*

Parker also claims that the evidence in the record shows that "the purported justifications for the termination of her employment (i.e., reorganization and upgrade her position) are manufactured and false." (D.I. 44 at 20.) Parker alleges that Comcast "fabricated reasons for firing [Parker] including false claims she was not performing her job satisfactorily." (D.I. 42, Ex. A at 59.) However, Parker does not allege any specific

facts regarding false criticisms being placed in her record. In fact, when asked about the criticisms of her work, she stated that her boss, Mr. William Mosley, shared specific criticisms with her, and discussed those criticisms with her. (*Id.* at 61.) Additionally, when asked whether either Mr. Mosley or Ms. Bethany Pace, another of Parker's supervisors, fabricated or lied about their criticisms of Parker, Parker's only response was "I don't know." (*Id.* at 61-62.)

Parker must allege that Comcast "falsified or manipulated employment records to create fictitious grounds for termination" for this narrow exception to at-will employment to apply. *See E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 439 (Del. 1996) (finding that superior falsified employment records when he "(1) misrepresented [Plaintiff]'s responsibilities to superiors so that it would appear that [Plaintiff] was not completing assigned tasks; (2) edited a progress report to superiors which would have had the effect of understating [Plaintiff's] accomplishments; and (3) failed to pass along the progress report showing some of [Plaintiff's] significant accomplishments during the critical time period in which [Plaintiff's] termination was decided."). Here, viewing the facts in the light most favorable to Parker, she only alleges that Comcast told her it was terminating her because of reorganization, when in fact, it was terminating her because of her poor performance.[10] (D.I. 45 at B-8, ¶ 33.) Parker has presented no evidence to show that any false criticisms were placed in her employment file and, in fact, stated that she didn't know whether the criticisms in her file

---

[10] Parker presents no evidence, aside from her statements that her work was constantly criticized, to show that she was terminated for poor performance.

were true or fabricated. (D.I. 42, Ex. A at 61-62.) She has simply failed to adduce proof to support her allegation of fabrication.[11]

Because "the common law rule regarding at-will employment authorizes the discharge of an employee at any time without cause," and because Parker's claims are insufficient as a matter of law to show that she was wrongfully terminated, *Lord*, 748 A.2d at 400, Comcast's Motion for summary judgment on this claim will also be granted.

## V. CONCLUSION

Accordingly, based on the foregoing reasons and authorities, Comcast's Motion will be granted. An appropriate order will follow.

---

[11] Parker argues that there was not a reorganization at Comcast (*see* D.I. 44 at 4), but she recognizes that another employee in her department was also terminated due to the reorganization Comcast said it was undertaking and that she and the other employee were offered alternative positions in the company. (D.I. 42, Ex. A at 50, 63-64.)